335 So.2d 91 (1976)
Mrs. Dorothy DUCOTE, Plaintiff and Appellant,
v.
Melvin HARRIS, d/b/a Colonial Nursing Home, and Highlands Insurance Company, Defendants and Appellees.
No. 5494.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1976.
Rehearing Denied August 4, 1976.
*92 Bennett & Wilson, by Donald R. Wilson, Marksville, for plaintiff and appellant.
Stafford, Randow, O'Neal & Scott by Hodge O'Neal, III, Alexandria, for defendants and appellees.
Before MILLER, DOMENGEAUX and PAVY, JJ.
DOMENGEAUX, Judge.
Plaintiff-appellant, Dorothy Ducote, instituted this action seeking benefits under the Louisiana Workmen's Compensation Act and penalties and attorney's fees against defendants-appellees, Melvin Harris, d/b/a Colonial Nursing Home, her former employer, and Highlands Insurance Company, its insurer. Defendants filed an exception of prematurity which the trial judge sustained. From the judgment of dismissal plaintiff has appealed. We reverse.
Plaintiff's petition alleges that on or about March 7, 1975, she was injured while in the employ of the defendant Harris. She subsequently received weekly compensation benefits and extensive medical treatment from the time of her injury until the institution of this suit. Defendant contends, and the trial judge found, that plaintiff failed to comply with the requirements set forth in LSA-R.S. 23:1314 and that consequently her institution of this action was premature.
LSA-R.S. 23:1314 provides as follows:
"§ 1314. Necessary allegations; support for allegations
Unless in the verified petition above referred to it is alleged (where the petition is filed by the employee or his dependents) that the employee or the dependents is not being or has not been paid, and that the employer has refused to pay, the maximum percent of wages to which petitioner is entitled under the provisions of this Chapter, or that the employee has not been furnished the proper medical attention, or that the employee has not been furnished with copies of the reports of examination or examinations made by employer's medical practitioners after written request therefor has been made under the provisions of this Chapter, the presentation or filing of such petition shall be premature and shall be dismissed; when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegations of nonpayment or of failure to render medical attention or failure to *93 furnish medical reports is justified under the facts shall be determined by the court before proceeding with the hearing of the other issues involved."
Plaintiff concedes that she was receiving weekly compensation payments but contends that her right to bring this action is based upon the two latter provisions of the above statute, namely defendants' failure to provide medical treatment and their refusal to furnish her with reports of some of the treating physicians.

FAILURE TO PROVIDE PROPER MEDICAL ATTENTION
The record reveals that at the time of the suit defendants had paid approximately $5,000.00 for medical services and drugs received by plaintiff as a result of her accident. However, plaintiff contends that defendants refused or neglected to pay a particular bill from the Opelousas General Hospital in the amount of $313.30. Plaintiff claims that the hospital billed her directly on more than one occasion for this sum and that she became distraught and feared that future medical services would be denied her because of nonpayment of said bill. The evidence indicates that defendants received a copy of this bill from plaintiff on November 4, 1975, and immediately wrote to the hospital asking for an itemization. The bill was paid on December 4, 1975. The record does not indicate that defendants had prior notice of the existence of said obligation. Certainly, they were entitled to an itemization. Under these facts we cannot say that defendants failed or refused to pay the bill, nor can we conclude that they were remiss in their duty to provide proper medical attention to plaintiff.
Furthermore, under our jurisprudence, failure to pay a workmen's compensation claimant's medical bill cannot be equated with a failure to provide proper medical attention. As we stated in Jack v. Fidelity & Casualty Company of New York, 306 So.2d 806 (La.App. 3rd Cir. 1975):
"In determining whether a suit should be dismissed on an exception of prematurity under LSA-R.S. 23:1314, the test is not whether the employer has refused to pay the medical bills incurred, but instead it is whether the employee has not been furnished the proper medical attention. Moore v. American Motorist Insurance Company, 216 So.2d 674 (La. App. 3 Cir. 1969); Dugas v. Houston Contracting Company, 191 So.2d 178 (La.App. 3 Cir. 1966)."

DEFENDANTS' FAILURE TO FURNISH MEDICAL REPORTS
Immediately after her injury plaintiff was sent to Doctor Joel Jackson in Cottonport, Louisiana, by her employer. Doctor Jackson apparently referred Mrs. Ducote to Dr. Luke Bordelon, an orthopedist, in Opelousas, Louisiana. A myelogram was performed on plaintiff at Opelousas General Hospital, and she was thereafter referred by Doctor Bordelon to Doctor T. E. Banks, an orthopedist in Alexandria, Louisiana. The record indicates that a copy of the myelogram was forwarded to Doctor Banks but that he returned it after a short time.
Mrs. Ducote was examined by Doctor Banks in the latter part of June, 1975, and the record contains a copy of a report which that physician sent to Doctor Bordelon on July 1, 1975. Thereafter, plaintiff's attorney wrote to Doctor Banks on or about September 19, 1975, requesting copies of the myelogram and any reports which he had prepared on Mrs. Ducote to that date. Doctor Banks wrote plaintiff's attorney stating in part:
"Reports dated 1 July and 11 July 1975 have been afforded Dr. Bordelon as well as the employer, Colonial Nursing Home of Marksville, Louisiana. This is a compensation case and will be adjusted by Crawford and Company, 3656 Government *94 Street, Alexandria, Louisiana 71301. Any inquiry should be made to the attention of Mr. Marshall Long, Manager, of Crawford and Company.
. . . . . .
. . . I would appreciate it if you would contact Crawford and Company for a copy of the July dated reports."
A carbon copy of this letter was sent to Mr. Marshall Long, with Crawford and Company Adjusters, in Alexandria, Louisiana. We note, at this point, that the record indicates that Doctor Banks was in error in his statement that Crawford and Company was in possession of the reports mentioned in his letter. Crawford and Company's claim, which is fully supported by the evidence, is that they did not receive said reports until much later.
On November 4, 1975, plaintiff's attorney wrote to Mr. Jim Gallent, an adjuster with Crawford and Company in Alexandria, and made formal demand upon him for copies of the July 1st report of Doctor Banks and the myelogram performed at Opelousas General Hospital. The attorney's letter indicated that the matter had been previously discussed and informed the adjuster that if no response were forthcoming within ten days legal action would be taken.
After failing to receive any reaction to the above mentioned communication, plaintiff's attorney filed this suit on December 1, 1975.
On December 17, 1975, the adjuster finally wrote to Doctor Banks stating that he had never received the July 1, 1975, report and at that time requested a copy of that record. The very next day, December 18, 1975, Doctor Banks forwarded a copy of the report in question to the adjuster who then waited until December 26, 1975, before sending a copy of it to plaintiff's attorney.
Under the factual situation presented by this litigation, we are of the opinion that Doctor Banks was the "employer's medical practitioner" as contemplated by LSA-R.S. 23:1314. Plaintiff was referred to Doctor Banks by Doctor Bordelon to whom plaintiff was referred by Doctor Jackson, who initially examined plaintiff at the request of her employer. Furthermore it is quite evident from a review of the record that Doctor Banks considered himself to have been retained by the employer and/or its insurer to examine the plaintiff.
While it is true that the adjuster was not in receipt of the July 1, 1975, report of Doctor Banks until approximately December 18, 1975, we find that this situation was created solely by the adjuster's own tardiness and apparent lax attitude in attempting to obtain said report from the physician. Defendants should have been put on notice by Doctor Banks' letter to plaintiff's attorney on September 24, 1975, (a carbon copy of which was sent to the adjusters) which stated that Crawford and Company was in possession of the medical reports and that any communication relative thereto should be made to that organization. Plaintiff's attorney's letter to the adjuster on November 4, 1975, was a formal written notice for production of the reports as required by the statute. While the response period of ten days afforded the adjuster by plaintiff's attorney in the November 4th communication was not necessarily controlling, it at least served to inform the adjuster that the matter required some attention on his part in the relatively near future. After obtaining no reaction from the adjuster for a period of approximately four weeks, plaintiff's attorney apparently felt that his only alternative was to litigate. Even after the suit was filed the adjuster waited an additional seventeen days before attempting to obtain the desired report or reports. We find significance in the fact that upon receipt of request for a copy of his report, the response to the adjuster by Doctor Banks was immediate. The record indicates that he complied with the adjuster's request within approximately 24 hours.
*95 We feel, that under the particular facts presented by this case, the insurer, although not in possession of certain medical reports, was obligated to go forth and obtain, within a reasonable time, any reports of its physicians when requested to do so in writing by the plaintiff or her attorney. We are of the opinion that, in the case at hand, the delays in obtaining and providing the necessary reports to the plaintiff were unwarranted and unjustified. Thus, we conclude that plaintiff sufficiently complied with the requirements of LSA-R.S. 23:1314 and hold that the exception of prematurity raised by the defendants should have been overruled.
We recognize that our holding herein is in conflict with the cases of Saia v. T. Smith & Sons, Inc., 100 So.2d 544 (La. App.Orl.1958); Moore v. Bridges & Bell, 115 So.2d 390 (La.App. 2nd Cir. 1959); and Glover v. Schuylkill Products Co., 138 So. 2d 15 (La.App. 1st Cir. 1962).
Simply stated, we are of the opinion that once a workmen's compensation claimant has demonstrated the occurrence of any one of the three prerequisites enumerated in LSA-R.S. 23:1314, said claimant is then possessed with the right to have a judicial determination made concerning his claim of disability and other matters incidental thereto. For this reason we are in disagreement with the Saia case, supra, and its progeny and choose not to follow them.
For the above and foregoing reasons the judgment of the district court sustaining the exception of prematurity is reversed, and this case is remanded to the district court for further proceedings not inconsistent with this opinion.
Costs of this appeal are assessed against the defendants-appellees.
REVERSED AND REMANDED.
PAVY, J., concurs in the result.