421 So.2d 331 (1982)
James W. DANEY
v.
ARGONAUT INSURANCE COMPANY.
No. 15067.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
*332 Jeff C. Calmes, Maurice J. Wilson, Jr., Baton Rouge, for plaintiff-appellant, James W. Daney.
R. Loren Kleinpeter, Baton Rouge, for defendant-appellee, Argonaut Ins. Co.
*333 Before COVINGTON, LEAR and LANIER, JJ.
LANIER, Judge.
This is a suit for workmen's compensation benefits and statutory penalties. The trial judge rendered judgment from the bench dismissing the petition at plaintiff's costs because there was "... no testimony to the effect that any occurrence took place in the course and scope of his employment that resulted immediately in an injury that's compensable under the laws of the State of Louisiana." This devolutive appeal followed.

I. FACTS
In August of 1978, the plaintiff-appellant, James W. Daney, began working as an ironworker for Star Steel Erectors, Inc. (hereinafter referred to as Star). At all times pertinent to these proceedings, the Argonaut Insurance Company (hereinafter referred to as Argonaut) was the workmen's compensation insurer of Star. In March of 1979, Daney testified that he was experiencing lower back pain of such a degree that he felt he could no longer continue working with Star. He informed his boss about his back problems and was subsequently "laid off" by Star. He collected unemployment compensation benefits from March until August of 1979.
Daney testified that between March and August of 1979, the only treatment he received for his back problem was from a chiropractor whom he saw briefly. In August of 1979, Daney went to Toledo, Ohio, where his family resides. He entered the Toledo Hospital for treatment on August 19, 1979, and remained until September 1, 1979.
The records of the Toledo Hospital show that on August 19, 1979, Daney's back was X-rayed. Doctor J.R. Yoder determined that the X-rays were negative for the lumbar spine. On August 22, 1979, Dr. Richard Shara interviewed and examined Daney. Daney gave him a history of low back pain for the previous two years. Daney indicated that the pain became progressively worse on his left side and into his left leg during the previous six months. Daney could not relate this problem to a specific injury or accident, but advised Dr. Shara that he fell at one time on his sacral area when he was walking down a ravine. Dr. Shara found a positive straight leg raising reaction on the left which indicated "an L5 radiculopathy", but that this diagnosis was tentative because Daney otherwise had normal reflexes.
On August 24, 1979, Dr. L.M. Heinz performed a lumbar myelogram on Daney and determined that he had an "extradural defect L4-5 on the left anterolaterally" and that these findings were "compatible with herniated nucleus pulposus." On August 24, 1979, Daney was also examined by Dr. A.W. Emch and gave a history of falling and hitting his left hip approximately one year previously. Dr. Emch found a positive straight leg raising test with some weakness of dorsiflexion on the right great toe. Dr. Emch felt that further information was necessary before a final recommendation could be made.
On August 27, 1979, Daney was examined by Dr. R.J. Gosling and gave a history of low back pain over the previous two years. Daney gave no history of any specific injury, but had a gradual onset of the problem. Dr. Gosling found "discomfort with deep pressure just below the left sacroiliac joint", "no true muscle tenderness", and that straight leg raising can be done through good range of motion bilaterally although there was "increased discomfort with straight leg raising on the left...." Dr. Gosling determined that Daney had "nerve root irritation" and felt that he would "respond to physical treatment with emphasis on therapeutic exercise."
Daney was discharged from the Toledo Hospital on September 1, 1979. His final diagnosis on discharge given by Dr. R. Hazelrigg was "Lumbar disc disease L-4-5 left." Dr. Hazelrigg determined that it was "best not to approach patient surgically at this time because symptoms had significantly resolved secondary to conservative therapy." Dr. Hazelrigg recommended physical *334 therapy on an outpatient basis and that Daney be reevaluated in approximately six weeks. The records of the Toledo Hospital indicate that Daney received physical therapy from September 4, 1979, through September 20, 1979. After the physical therapy was completed, Daney was discharged by his doctors and advised that he could return to his regular work.
Daney returned to Louisiana and in the beginning of October of 1979, returned to work with Star. On October 12, 1979, Daney was working on a wharf for a grain elevator in Myrtle Grove, Louisiana. He testified that he and several other workers were shoving a 30 foot steel rod inside a U-shaped concrete structure when he twisted his back and felt low back and leg pain. Daney testified that he then stopped working and loafed until the end of the shift. Daney testified that either that evening or the next morning he called his boss and advised him that he had hurt his back on the job.
Daney was examined by Dr. John A. Thomas on October 16, 1979. He gave a history of developing severe low back pain while doing some heavy lifting and pulling of steel. Daney advised Dr. Thomas that the pain continued in his lower back area with radiation into his left leg which cramped his calf muscles. Dr. Thomas' examination revealed "a man who is obviously in moderate distress from lower back pain with definite paralumbar muscle spasm on both forward and lateral bending and restricted secondary to muscle spasm and pain." Dr. Thomas determined that Daney was "suffering from a lumbar disc disease." Dr. Thomas recommended bed rest with medication for pain and muscle spasm and asked Daney to return for reexamination in two weeks. Dr. Thomas was "hopeful that his symptoms will fully resolve and he may return to a normal work level." Daney received five physical therapy treatments from the Baton Rouge Physical Therapy and Rehabilitation Center between October 30, 1979, and November 6, 1979. During those treatments, he "was limited in forward flexion which also caused the radicular pain down the leg."
On November 16, 1979, Daney was referred to Dr. John R. Clifford. Daney gave Dr. Clifford a history of experiencing pain in his low back and left leg while lifting a piece of steel on October 12, 1979. Daney gave no past history of serious illness, injuries, or operations.[1] Dr. Clifford's examination revealed mild to moderate bilateral paraspinous muscle spasm, he found that flexion was painful past 60 degrees, and that the straight leg raising test was positive on the left. Dr. Clifford was of the opinion that Daney's "complaints are very likely on the basis of a ruptured lumbar disc." Dr. Clifford recommended a period of inpatient traction and physical therapy and a period of convalescence of approximately two to three weeks after those procedures.
Daney was admitted to Our Lady of the Lake Medical Center in Baton Rouge, Louisiana, on November 25, 1979, and received traction and physical therapy until his discharge on December 1, 1979. Dr. Clifford gave an admit diagnosis for Daney of "Lumbar Disc Herniation" and a discharge diagnosis of "Lumbar Disc Rupture." Dr. Clifford determined that Daney showed significant improvement in his symptoms from this treatment, but advised Argonaut that he "is still considered disabled and unable to work at this time."
Dr. Clifford saw Daney on December 7, 1979. He observed that "his complaints appear to be very slowly resolving", and that Daney had "very minimal paraspinous muscle spasm ..." and a "good range of motion." Dr. Clifford again saw Daney on December 14, 1979. He observed that his "complaints are very slowly subsiding" and "advised him to remain on diminished activity but increasing the amount of bending, stooping and squatting he does over the next month...." Dr. Clifford again saw Daney on January 14, 1980. He observed that Daney's "complaints have remained essentially *335 unchanged...." Dr. Clifford at that time felt that "we should proceed with the myelogram to determine what exactly is going on here. I discussed this with Mr. Daney and arrangements are being made for his admission to the hospital in the very near future."
Daney was again seen by Dr. Clifford on February 4, 1980, and his complaints were essentially the same. At that time, an EMG was performed by Dr. Levert and those findings were "compatible with, but not diagnostic of, left S-I radiculopathy." Dr. Clifford reported to Argonaut that he was encouraging Daney "to accept hospitalization for performance of a myelogram..." and that "[A]rrangements are being made for his admission to the Baton Rouge General Hospital in the near future and we will keep you posted as to the findings on myelography."[2] In his report of January 28, 1981, Dr. Clifford indicated that Daney "did not keep any follow-up visits and was not seen again until the 28th of January, 1981, ...."
On March 12, 1980, Daney was examined by Dr. Richard W. Levy. He gave a history of bending over pulling on iron bars and hurting his low back in March of 1979.[3] Daney advised Dr. Levy that he stopped working at that time and returned to Toledo, Ohio, where he was hospitalized and a myelogram and an EMG were done. Daney advised Dr. Levy that after treatment in Toledo, he was advised that he could return to work and in October of 1979, he did so. Daney further advised Dr. Levy that he worked for about one week, whereupon on October 13, 1979, he reinjured his back and was referred to Drs. Thomas and Clifford. Daney denied at that time having had a prior back injury and gave complaints of pain in the low back going into the left leg. Dr. Levy examined Daney and found no paraspinal muscle spasm in the lumbar region, that he was able to bend forward to 85 degrees and that backwards bending and lateral bending were restricted in the extremes of motion. The straight leg raising test was carried to 85 degrees bilaterally, the thighs and calves were equal in circumference on both sides, and the muscle power, deep tendon reflexes and sensation were normal throughout both lower extremities. No pathological reflexes were found. Dr. Levy was of the opinion that this neurological examination revealed no objective mechanical low back signs other than a very slight limitation on forward bending. He found no evidence of spinal cord or nerve root injury or disease and determined that Daney did not have a neurological basis for his symptoms. Specifically, Dr. Levy found no evidence of a ruptured intervertebral disc in the lumbar region and felt that no further neurological diagnostic studies or neurosurgery was warranted or indicated.
The records of Argonaut indicate that Daney was paid workmen's compensation benefits of $148 per week from October 21, 1979, through March 29, 1980 (24 weeks), totaling $3,552.00. Compensation benefit payments were terminated by Argonaut after receiving the report of Dr. Levy. During the period of November 7, 1979, through March 2, 1981, Argonaut paid medical bills on behalf of Daney totaling $1,886.20.
In the summer of 1980, Daney entered Louisiana State University with the help of Vocational Rehabilitation benefits. At the time of trial, he was working toward a general degree with a major in construction and was working parttime as an I.D. checker with Intramural Services at Louisiana State University. During the period between February 4, 1980 and the date of trial, July 13, 1981, the only medical treatment that Daney received for his back was two or three visits to the Student Health Service at Louisiana State University.
At the request of Argonaut, Daney was again examined by Dr. Clifford on January 28, 1981. At that time, Dr. Clifford was of *336 the opinion that Daney did not have a ruptured intervertebral disc of any significance because "if he had had one a year ago of a significant size or degree that would require surgical intervention, I feel that the pain would have continued to become worse to the point that he would have sought further medical assistance from a physician of my specialty within the last nine months." Dr. Clifford was of the opinion that Daney sustained a contusion of the muscles of the lumbar spine and stretched ligaments. Dr. Clifford did not feel that Daney was disabled from working, although he indicated that "he may have difficulty doing heavy type of work in view of the fact that he has not done any of this type of work for over a period of fourteen to sixteen months." He gave Daney a disability of 10 percent of the body as a whole, based on his subjective complaints, although there were no definitive physical findings. Dr. Clifford's examination revealed no muscle spasm, a range of motion 95 percent of normal, a positive straight raising test on the left at about 90 degrees and a negative straight raising test on the right. Dr. Clifford found "no obvious motor weakness, no sensory deficit and the reflexes are equal and active."

II. APPLICABLE LAW
In a workmen's compensation action, the employee bears the burden of establishing by a preponderance of the evidence that he received a personal injury arising out of and in the course of his employment and that a causal relationship exists between his disability and the accident. Cadiere v. West Gibson Products Company, Inc., 364 So.2d 998 (La.1978); Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976). In Parks v. Insurance Company of North America, supra, at pages 280 and 281 of the Southern Reporter, the terms "accident" and "injury" are defined as follows:
"The terms `accident' and `injury' for the purpose of the workmen's compensation statute are defined in La.R.S. 23:1021 as follows:
(1) `Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.
(7) `Injury' and `Personal Injuries' includes only injuries by violence to the physical structure of the body and such disease and infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.
"We note at the outset that the courts of this state have consistently accorded the terms of the Workmen's Compensation Act a liberal construction in order to effectuate its beneficient purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the costs in channels of commerce. Danielsen v. Security Van Lines, Inc., 245 La. 450, 158 So.2d 609 (1963); Geist v. Martin, Decker Corp., 313 So.2d 1 (La.App. 1st Cir. 1975). Louisiana is among the many jurisdictions that look to the employee to determine whether there was an unexpected and catastrophic effect upon him in deciding that an injury is accidental. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). We have held that extraordinary physical stress and strain is not essential to the definition of disabling accident: when the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968). More particularly, we have recognized that the fact that a condition may commonly be referred to as an illness or disease does not thereby preclude its classification as an accident. Jennings v. Louisiana Southern Life Insurance Co., 290 So.2d 811 (La.1974). In Jennings, we noted that among other conditions frequently termed as diseases, heart disease, stroke, heat stroke, herpes zoster (shingles), cancer and `bends' have all been treated as *337 compensable accidents within the contemplation of the Workmen's Compensation Act...."
"... Our jurisprudence demonstrates that it is not necessary that an accident be caused by extraordinary activities of an employee or that said activities be the exclusive cause of an accidental injury. It is only necessary that the accidental injury be caused or precipitated by the usual and customary actions, exertion, or other factors directly connected with the employment. Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). It is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor. Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969). We have recently held, moreover, that an accident which aggravates or accelerates a pre-existing condition is compensable even where disability is not caused by a single or specific incident. Chism v. Kaiser Aluminum & Chemical Corp., 332 So.2d 784 (La.1976)."

III. THE "ACCIDENT" OF MARCH, 1979
The trial judge specifically ruled that Daney failed to prove that an "accident" or "injury" was sustained by him in March of 1979 that was causally related to his employment. This factual finding must be upheld on appellate review unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Yokeum v. ITT Henze Service, 396 So.2d 611 (La.App. 1st Cir.1981).
Daney could not relate his back problems in March of 1979 to his job as an ironworker in either his testimony at the trial or in the medical histories that he gave to the various doctors. The only traumatic incident he referred to was that when he slipped on a rock and fell while hiking in the Tunica Hills of West Feliciana Parish. This incident occurred prior to the time that he secured employment with Star. There is no medical evidence in the record to show that the back pain occurring in March of 1979 constituted an "accident" or was causally related to Daney's work with Star. After carefully reviewing the entire record, we cannot say that the district court's finding that appellant's back problems in March of 1979 were not job related is clearly wrong.

IV. THE "ACCIDENT" OF OCTOBER, 1979
A. Accident
Daney's version of the 1979 accident is uncontradicted in the record.[4] In evaluating evidence, a trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Jones v. Alexander, 399 So.2d 216 (La.App. 2nd Cir.1981). The medical evidence of record partially corroborates Daney's version of the October, 1979, accident by showing that some type of event aggravated his back condition. When Daney was discharged by his doctors in Toledo, Ohio, he was advised that he could return to his regular work. When he was examined by Dr. Thomas on October 16, 1979, he was found to be "a man who is obviously in moderate distress from lower back pain with definite paralumbar muscle spasm on both forward and lateral bending and restricted secondary to muscle spasm and pain." This medical condition was confirmed by Dr. Clifford. Argonaut commenced making compensation benefit payments to Daney on November 7, 1979. Under all of these circumstances, it is our opinion that the trial court was clearly wrong in determining that there was "... no testimony to the effect that any occurrence took place in the course and scope of his employment that resulted immediately *338 in an injury that's compensable under the laws of the State of Louisiana."
B. Disability
The claimant in a workmen's compensation proceeding bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. Elie v. St. Paul Fire & Marine Insurance Company, 408 So.2d 297 (La.App. 3rd Cir.1981); Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1st Cir.1977). The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La. 1977); Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975). Disability is compensable only if it results from a work-related accident. Simpson v. S.S. Kresge Company, 389 So.2d 65 (La.1980).
The evidence of record shows that the accident of October, 1979, resulted in an injury which caused Daney to be temporarily totally disabled, and he was paid compensation benefits on that basis until March of 1980. From March of 1980 until the date of trial, Daney was neither temporarily nor permanently totally disabled, as contemplated by the Louisiana Workmen's Compensation Law, because he was capable of a gainful occupation for wages. La.R.S. 23:1221(1) and (2); Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Smith v. State, Department of Highways, 370 So.2d 1295 (La.App. 3rd Cir.1979). The medical evidence of record shows that Daney is employable. Daney admitted that he was advised by Dr. Clifford to return to work. Daney has secured a parttime job earning wages with the Intramural Services at Louisiana State University. Daney is seeking a general degree with a major in construction and it is doubtful that he would take the time and expense to secure this skill if he were unable to do the work associated with it.
If an employee is unable to "perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description ...", but is able to engage in gainful activity at some job for which he is fitted by education, training or experience, he is considered partially disabled. La.R.S. 23:1221(3); Wright v. Aetna Life and Casualty Company, 405 So.2d 1166 (La.App. 1st Cir.1981); Jacks v. Banister Pipelines America, 396 So.2d 604 (La.App. 1st Cir. 1981). Daney testified that he is unable to do heavy manual labor, however, the record does not reflect that he has attempted heavy manual labor since the accident of October, 1979. Daney has introduced no lay or medical testimony to support his position. The medical evidence of Drs. Clifford and Levy indicates that there are no significant objective findings showing that Daney is suffering from a neurological disability and his complaints are subjective in nature. Dr. Clifford was of the opinion that Daney could return to his usual work, although he would experience difficulty due to the substantial time lapse since he last did that type of work. Under all of these circumstances, it is our opinion that Daney has failed to prove by a preponderance of the evidence that he is partially disabled.
Where the usefulness of a physical function of an employee is seriously permanently impaired, the court may allow such compensation as is reasonable, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks. La.R.S. 23:1221(4)(p). Dr. Clifford assigned Daney a total disability of 10 percent of the body as a whole, based on his subjective complaints. However, there is no evidence in the record to show what portion, if any, of this assigned disability is attributable to the accident of October, 1979, or to Daney's back condition as it existed prior to that date. There is no evidence in the record to show what were Daney's wages in October of 1979. Since Daney has not satisfactorily demonstrated a causal relationship between this disability and the accident of October, 1979, nor proven the wages upon which compensation is calculated, he cannot recover benefits on this basis.

*339 V. CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Dr. Clifford in his deposition testified that Daney did not advise him about the myelogram performed at the Toledo Hospital. Daney testified at the trial that he did.
[2] Daney testified at the trial that he "... was never set to have a myelogram."
[3] Daney testified at the trial that he told Dr. Levy what happened in October of 1979 and did not relate a specific incident in March of 1979.
[4] At the trial, Daney did not call his fellow workers or his boss to corroborate his story, nor did Argonaut call these individuals to contradict it.