DOMENGEAUX, Judge.
This is an action by Gladys Harris, individually and as natural tutrix of her two minor children, for the recovery of death benefits, penalties, interest, and attorney’s fees allegedly due under the Louisiana Worker’s Compensation Act as a result of the death of her husband. The defendants herein are the employer, Trailways Southern Lines, Inc. (Trailways), and its insurer, Liberty Mutual Insurance Company (insurer). The district court rendered judgment in favor of the plaintiff as to the death benefits, but declined to impose upon the defendants the statutory penalties and attorney’s fees for arbitrary or capricious nonpayment of benefits. The defendants appealed, citing as error the trial court’s ruling on an exception of prematurity and on the merits. The plaintiff answered the appeal asking this Court to award penalties *111 and attorney’s fees for arbitrary and capricious nonpayment of benefits.
Lawrence Harris was born on January 18,1943. In 1973 he married Gladys Thomas. The couple had two children, Lisa and Lawrence, II. Mr. Harris became employed by Trailways in March of 1978, as an extra-board driver. His duties included loading and unloading freight, assisting passengers, and operating the motor coaches.
On October 8, 1982, Lawrence Harris was scheduled to make a round-trip Baton Rouge/Houston bus run which departed at 8 o’clock P.M. Between Baton Rouge and Houston, Mr. Harris stopped at six scheduled stops. There were also four “flag stops” on this route, but it is unknown whether anyone signaled the bus to stop at those points. Mr. Harris arrived in Houston at 2:30 A.M. on October 9th. He had a layover until 10 o’clock that evening when he began the return trip to Baton Rouge, arriving there at 4:30 A.M. on Sunday, October 10, 1982. Mr. Harris returned to his home in Simmesport, appearing there at approximately 6:30 A.M.
According to the testimony of Mrs. Harris, Lawrence Harris left their home on October 8th in good health and spirits. He ate well, appeared happy, and did not mention any physical ailments. Upon returning from his run, however, Mr. Harris complained of sore throat and neck pain. He took two aspirin and went to bed. By noon Mr. Harris’ condition had deteriorated enough to warrant the attention of a physician. At approximately 3:30 P.M. he was examined and treated in the emergency room at Marksville General Hospital for pharyngitis and sent home. At this time Mr. Harris’ lungs appeared to be functioning properly and no chest x-rays were taken. Around 1:15 A.M. on the morning of October 11th Mr. Harris lost consciousness. An ambulance was called to transport him to Marksville General Hospital where he was pronounced dead on arrival. An autopsy was performed. The certificate of death, issued by the coroner for the Parish of Avoyelles, listed the immediate cause of death as bilateral fulminating pneumonia caused by bronchitis. It was estimated that the bronchitis began 48 hours before death and that the pneumonia followed 24 hours later. A condition contributing to the death was specified as bronchiectasis.
About a week after her husband’s death, Mrs. Harris traveled to Baton Rouge to speak to the Trailways’ City Manager there. Mrs. Harris testified that she presented the death certificate and specifically asked about her husband’s life insurance. She also claims that she inquired about any other benefits payable on account of her husband’s death and was told none were available. The City Manager testified that he did not remember being asked about other benefits, and at any rate, would not know whether they were due or not.
Mrs. Harris filed suit on behalf of herself and her minor children seeking death benefits for her husband’s death under the Louisiana Worker’s Compensation Act. The trial court awarded the benefits but declined to impose the penalties and attorney’s fees of La.R.S. 23:1201.2.
PREMATURITY
We turn first to the defendants’ contention that the trial court erred in overruling the exception of prematurity. The case of Moore v. Bridges and Bell, 115 So.2d 390 (La.App. 2nd Cir.1959) is directly on point. In Moore, the defendants averred that they had not been given notice of the alleged injury from which their employee suffered. That court held:
“Neither a demand, formal or otherwise, nor a specific charge that the employer has refused to pay compensation or other benefits under the statute, nor proof thereof, is indispensable or essential in an action for workmen’s compensation in order to avoid the effect of or to result in a dismissal of the action under a plea of prematurity.
# sjs # ⅞: * *
Where a petition recites, as does the present complaint, a statement of facts *112 which, if true, entitles the claimant to compensation, and there is the further allegation that the claimant has not been paid compensation or is not being paid at the maximum rate to which he is entitled under the compensation statute, the truth of which is either admitted by the employer and/or his insurer, or is established on the trial of a plea of prematurity, the petition is not amenable to such a plea and the plea should be overruled.” [1]
See also D’Antoni v. Employers Liability Assurance Corporation, 213 La. 67, 34 So.2d 378 (1948), and Glover v. Schuylkill Products Company, Inc., 138 So.2d 15 (La. App. 1st Cir.1962).
In the instant case, the plaintiff alleged facts in her petition which, if true, would entitle her to the death benefits in question. In its answer the defendant-insurer asserted it had not paid any compensation for the death of Lawrence Harris. Therefore, the petition is not amenable to an exception of prematurity. Moore v. Harris, supra.
MERITS
The defendants also contend that the lower court erred in ruling that the deceased worker experienced an injury compensable under the Worker’s Compensation Act. La.R.S. 23:1031 mandates compensation to an employee who is injured as the result of an accident arising out of and in the course of his employment. We have reviewed the elements of the statute as applied to the facts of this case and determined that the death benefits are due the plaintiff. “ ‘Accident’ means an unexpected or unforseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.” La.R.S. 23:1021(1). This term has been given a liberal interpretation by our jurisprudence. Funderburk v. Calcasieu Paper Company, 261 So.2d 277 (La.App. 3rd Cir.1972), writ denied, 262 La. 193, 262 So.2d 789 (1972); Gotte v. Cities Service Oil Company, 298 So.2d 920 (La.App. 3rd Cir.1974), writ denied, 302 So.2d 37 (La.1974). In the present case, the deceased worker began experiencing the symptoms of a sore throat while on his layover in Houston. The pathologist who performed the autopsy and the coroner of Avoyelles Parish both testified that the decedent’s pharyngitis, left untreated and subject to the rigors of his employment, is what prevented the decedent’s body from rejecting the invasion of the pneumonia virus. We feel these circumstances constitute an “accident” as it is defined in the Act. See Gotte v. Cities Service Oil Company, supra, and Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976).
An accident must arise out of the employment to be compensable. According to Malone and Johnson, this means that the employment must have an intrinsic risk that this injury might occur. Malone and Johnson, Louisiana Workers’ Compensation Law and Practice (1980), Sec. 143, page 276. This phrase contemplates that the accident will result from some risk to which the employee is subjected to in the course of his employment and to which he would not have been subjected had he not been so employed. King v. Wilson Brothers Drilling Company, Inc. 441 So.2d 68 (La.App. 3rd Cir.1983), writ denied, 443 So.2d 598 (La.1983), and Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982).
Testimony at trial revealed the deceased was required to make a six and one-half hour drive from Houston to Baton Rouge after he contracted pharyngitis. This trip potentially included eleven intermittent stops whereat the deceased was exposed to rapid and extreme temperature changes as he continually got on and off the air conditioned bus. Not only was the deceased deprived of the rest his body needed, but he also had to assist passengers and physically load and unload freight *113 and baggage at each stop. Finally, it should be noted that the pneumonia virus is community in nature and the decedent's occupation exposed him to a multitude of people all confined to close quarters. As did the trial judge, we find the plaintiffs met their burden of proof that the decedent’s fatal illness arose out of his employment.
We also find the decedent’s last illness was contracted during the course of his employment. According to Malone and Johnson, “in the course of employment” indicates that the relationship between time, place, and worker activity is important. Malone and Johnson, Louisiana Workers’ Compensation Law and Practice (1980), Sec. 141, page 273. See also Guidry v. Sline Industrial Painters, Inc., supra, and King v. Wilson Brothers Drilling Company, Inc., supra. Although the death actually occurred when the deceased was off work, the symptoms of the original pharyngitis appeared during the layover in Houston. Further, the record reflects that competent medical testimony estimated the invasions of the bronchitis and pneumonia viruses at 48 and 24 hours before death, respectively. Such testimony places the viral attacks within the course of the decedent’s employment. See Weber v. McLean Trucking Company, Inc. 265 So.2d 628 (La.App. 3rd Cir.1972) for a similar series of events leading to an award of death benefits.
Absent manifest error, reasonable inferences of fact by the trial court will not be disturbed. Chapman v. Belden Corporation, 414 So.2d 1283 (La.App. 3rd Cir.1982), reversed in part on other grounds at 428 So.2d 396 (La.1983).
For the reasons assigned above, we find no error in the trial court’s award of death benefits to the plaintiff.
PENALTIES
The plaintiff assigns as error the trial court’s refusal to hold the defendants liable for penalties and attorney’s, fees. La.R.S. 23:1201.2 provides that when an employer or insurer is found to have acted arbitrarily, capriciously, or without probable cause in the nonpayment of benefits, penalties and attorney’s fees should be awarded to the plaintiff. Ordinarily, no penalties will be assessed against a defendant for taking close factual questions to the court. Chisholm v. L.S. Womack, Inc., 424 So.2d 1138 (La.App. 1st Cir.1982); Ebarb v. Insurance Company of North America, 424 So.2d 1266 (La.App. 3rd Cir.1982). Further, “whether refusal to pay benefits is arbitrary, capricious, or without probable cause is partially a factual determination which will not be disturbed in the absence of manifest error.” Chapman v. Belden Corporation, supra. We find no manifest error herein.
For the above and foregoing reasons the decision of the district court is affirmed. The costs of this appeal are to be borne one-half by the plaintiff, and one-half by defendants.

. In Ducote v. Harris, 335 So.2d 91 (La.App. 3rd Cir.1976) we noted that our holding therein was in conflict with Moore v. Bridges & Bell, supra. However, we cite Moore in this case for a proposition different from the one which caused our disagreement in Ducote.