486 So.2d 1190 (1986)
Julia K. BOREN, Plaintiff-Appellee,
v.
LOUISIANA PACIFIC CORPORATION, Defendant-Appellant.
No. 85-331.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1986.
Rehearing Denied May 6, 1986.
Writ Denied June 20, 1986.
*1191 Michael H. Davis, Alexandria, for plaintiff-appellee.
Donald R. Wilson, Jena, for defendant-appellant.
Before KNOLL, KING and BRUNSON,[*] JJ.
KNOLL, Judge.
Louisiana Pacific Corporation appeals the trial court's judgment awarding Julia K. Boren worker's compensation benefits of $163 per week for the death of her husband, Leon Boren. Louisiana Pacific contends the trial court erred in awarding worker's compensation death benefits: (1) when there was no proof of an accident; and (2) where Mrs. Boren failed to carry her burden of proving, by a preponderance of the evidence, that her husband's illness was employment-related. We reverse, finding the record lacks sufficient evidence to support the trial court's finding that Mr. Boren's illness was causally related to his employment.

FACTS
Leon Boren, 59 years of age, was employed as a millwright for Louisiana Pacific. His job entailed maintenance, repair, and welding. On the morning of June 26, 1981, Mr. Boren left work due to severe lower abdominal pain and was admitted to the emergency room at Rapides General Hospital. He was subsequently transferred to the intensive care unit because he was critically ill.
During the week preceding his admission to the hospital, Mr. Boren had a history of diarrhea and vomiting. He missed two days of work, returned for a full day of work on June 25, and then worked part of the morning of June 26. Upon his admission to the hospital, Mr. Boren was evaluated by surgeons, urologists and internists, who concluded that he had an acute abdomen. Surgery was performed and the appendix was removed, but there was no evidence of an appendicitis. After surgery, Mr. Boren remained in a shock-like condition, reminiscent of septic shock. He died three days later.
An autopsy confirmed that Mr. Boren died of septic shock due to gastroenteritis following a perforation of the bowel. Clinical and pathological findings support that the most likely diagnosis is septic shock syndrome with the portal of entry of bacteria being the gastrointestinal tract.

PROOF OF AN ACCIDENT
Louisiana Pacific contends Mrs. Boren failed to prove an accident occurred and that Mr. Boren's illness does not fall within the definition of accidental injury as contemplated by the worker's compensation law.
LSA-R.S. 23:1031 provides in pertinent part:
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated."
The terms "accident" and "injury" for the purpose of worker's compensation are defined in LSA-R.S. 23:1021 as follows:
"(1) `Accident' means an unexpected or unforseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptons of an injury.
* * * * * *

(7) `Injury' and `personal injuries' include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any *1192 other form of disease or derangement, however caused or contracted."

Our courts have consistently accorded the terms of the Worker's Compensation Act a liberal construction in order to effectuate its beneficent purpose of relieving workers of the economic burden of work-connected injuries by diffusing the costs in channels of commerce. Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976). Extraordinary physical stress and strain is not essential to the definition of an accident when the performance of the usual and customary duties of a worker cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. Daney v. Argonaut Ins. Co., 421 So.2d 331 (La.App. 1st Cir. 1982); Parks, supra; Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). More particularly, the Louisiana Supreme Court has recognized that the fact that a condition may commonly be referred to as an illness or disease does not thereby preclude its classification as an accident. Daney, supra; Parks, supra.

In the instant case, Louisiana Pacific contends that Mrs. Boren must be able to identify a single event or a chain of events occurring at the work place, during Mr. Boren's employment, which caused his infection or illness. We disagree. The jurisprudence clearly establishes that an illness or disease which is not sudden may be classified as an accident and may fulfill the statutory requirements for an accidental injury under the Worker's Compensation Act. Therefore, Mrs. Boren's inability to identify a specific accident or chain of events would not preclude her from receiving death benefits.

CAUSATION
As in all civil actions, the plaintiff in a worker's compensation case must establish causation by a preponderance of the evidence. Flood v. Hub Auto Parts, Inc., 425 So.2d 941 (La.App. 4th Cir.1983), writ denied, 429 So.2d 158 (La.1983); Martin v. Rollins Services Inc., 424 So.2d 429 (La. App. 4th Cir.1982); Prim v. City of Shreveport, 297 So.2d 421 (La.1974). This burden is met when the evidence, taken as a whole, shows that a causal connection between the employment activity and the injury or illness is more probable than not. Flood, supra; Martin, supra. It is not necessary to show that the injury was caused by unusual activities of the employee or that those activities were the exclusive cause of the accident. It is only necessary to show that the death or disability was caused or precipitated by the employee's usual and customary activities or other factors directly connected with his employment. Nor is it required that the claimant establish the exact cause of the injury in order to recover benefits; it is only necessary to show that somehow the work caused the accident or illness. Flood supra; Martin, supra. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Prim, supra; Jones v. Alexander, 399 So.2d 216 (La.App. 2nd Cir.1981), writ denied, 400 So.2d 1383 (La.1981).
An employee's disability or death will be presumed to have resulted from an employment accident if before the accident the employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the employment and the illness or disabling condition. Martin, supra; Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982). When applicable, this presumption is not conclusive, but shifts the burden to the defendant to produce evidence sufficient to rebut it. Martin, supra; Hammond, supra.
The determination of a causal relationship between a worker's employment and injury or death is a question of fact for the trial court. On appellate review this factual finding should not be disturbed when there is evidence before the court which, *1193 upon its evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings unless those findings are clearly wrong. The trial judge's findings on the question of causation must be given great weight. Flood, supra.
In the instant case, Mrs. Boren contends that her husband was exposed to numerous toxic chemicals at the work place which caused his fatal illness. Mrs. Boren further relies on her sister-in-law's testimony that Mr. Boren stated that he dropped his welding rod several days prior to becoming ill, lifted his mask and bent over to pick up the welding rod; Mrs. Boren contends that this allegedly contributed to her husband's illness. The record is void of any evidence linking this incident to Mr. Boren's illness or death. Further, Dr. Victor A. Drill testified that the isolated incident of dropping the welding rod and picking it up could not have caused Mr. Boren's illness; therefore, we reject this contention for lack of evidence to support it.
The record before us contains the expert testimony of four doctors on the issue of causation. Dr. James G. Hair, the pathologist who performed Mr. Boren's autopsy, concluded that Mr. Boren's immediate cause of death was septic shock due to gastroenteritis. Gastroenteritis can result from a chemical, viral or bacterial insult. Dr. Hair testified that Mr. Boren eventually suffered from bacterial gastroenteritis but he could not determine whether or not it originated from a chemical insult, nor could he say that Mr. Boren's death was employment-related.
Dr. James P. David examined Mr. Boren in the emergency room and ultimately performed surgery on him. Dr. David opined that Mr. Boren died as a result of shock, and secondary, from the absorption of the bacterial toxins and the septicema he had incurred. Dr. David testified that heavy metals, such as lead, can cause gastroenteritis. However, the pathology department took specimens of Mr. Boren's tissues for heavy metals; the results of the laboratory examinations of the specimens were negative. Dr. David further testified that he inquired about the types of substances Mr. Boren worked with, but none of the substances were pertinent to causing his gastroenteritis.
Dr. Kendall Trevor From, Jr. examined Mr. Boren while he was in the intensive care unit. Dr. From diagnosed Mr. Boren as having an ascending colangitis and septic shock syndrome; this diagnosis was later confirmed. He opined that it is more probable than not that the lesions which permitted the bacteria to enter Mr. Boren's blood stream, and ultimately led to his death, were due to a bacterial or viral infection. However, he could not say definitely what caused Mr. Boren's condition or when it began.
Dr. Victor A. Drill, who specializes in pharmacology and toxicology, studied Mr. Boren's hospital records and autopsy report, and the consultation notes and depositions of the three aforementioned doctors. He agreed that Mr. Boren died from a severe gastroenteritis. Dr. Drill received a list of chemicals to which Mr. Boren was exposed at work, and their respective quantities. He concluded that any chemicals to which Mr. Boren was exposed were in such insignificant amounts that they could not have contributed to Mr. Boren's death. He testified that Mr. Boren's exposure to any dangerous concentrations of the chemicals would have caused lesions on his skin, which Mr. Boren did not have. If Mr. Boren had ingested toxic amounts of the chemicals, he would have had a burning of the esophagus and other symptoms which would have been evident in the autopsy. If Mr. Boren had inhaled toxic fumes, the first areas affected would have been the nose, throat, pharynx, and eyes. He stated that there were changes in Mr. Boren's stomach which were related to shock stress, but not the type of stomach changes one would get with a caustic or toxic material. Dr. Drill concluded it was more probable than not that none of the chemicals to which Mr. Boren was exposed at work would have caused his death. Dr. Drill testified that at the time of Mr. Boren's illness, there were similar infections in his *1194 family. He opined that either bacteria or a virus caused Mr. Boren's gastroenteritis.
Mrs. Boren testified that Mr. Boren returned home daily with wet clothes and shoes, soaked with chemicals which had a very offensive smell. Dr. Drill testified that the concentration of phenol or formaldehyde was not so great as to be toxic. He stated that the chemicals diluted in water were safer than exposure to the original material, and further, that the residues which may have collected in the vats could not be more toxic than the original material.
In the instant case the trial court concluded that Mr. Boren's illness was employment-related. In its written reasons for judgment, the court stated:
"From this evidence, it is more plausable [sic] than not that something at work at least contributed to the illness afflicting Mr. Boren. This is the most plausable [sic] explanation of why the symptoms disappeared or diminished upon Mr. Boren's return home but reappeared or worsened upon his return to work. Although a casual [sic] relationship cannot be shown to link the environment of the work place to Mr. Boren's symptom change, there certainly is a strong correlation between his contact with the work environment and the enhancing of the symptoms. This cannot be dismissed as pure coincidence, nor can this be dismissed by assuming that the bed rest Mr. Boren had at home could account for this fluxuation [sic]. This possibility was dispelled by Dr. Drill who stated that bedrest or the lack of bedrest would not have made any difference.
Regardless of whether it was a foreign virus, a foreign bacteria, or an indigenous ecoli [sic] bacteria that had damaged Mr. Boren's mucosa, it is clear that the symptoms improved at home but worsened at work.
In his work environment, Mr. Boren was exposed to a great variety of chemicals, none of which are known to be toxic or at least are not known to be in toxic concentrations. Nevertheless, there is no evidence ruling out the possibility that these chemicals could react adversely with a particular individual or ruling out the possibility that chemicals could have aggravated Mr. Boren's condition.
Employees of the defendant stated that some of these chemicals were noxious and foul smelling. Similarly petitioner recalls her husband constantly returning home soaked with chemicals, necessitating his undressing outside where his clothes were washed. She described the chemicals as foul smelling and added that the fumes burn her eyes, nose and throat. So while these chemicals were not toxic, the evidence shows they were harsh enough to qualify as irritants and thus harsh enough to exacerbate the condition which was afflicting Mr. Boren.
In conclusion, it is the finding of the Court that Mr. Boren was afflicted by an illness which is normally not fatal, and that Mr. Boren came in direct contact with chemicals of a generally nonharmful nature, but that the combination of the chemicals and the illness produced a fatal condition. This finding best explains the correlation between Mr. Boren's exposure to the chemicals and the aggravation of his symptoms."
Because the record lacks any evidence that Mr. Boren's illness or death was caused by his work environment, we must reverse the ruling of the trial court. All of the doctors testified that Mr. Boren's illness was, more probable than not, of a bacterial or viral origin. Further, Mr. Boren was one of 32 millwrights, none of whom experienced an illness similar to his.
Mrs. Boren relies heavily on the fact that Mr. Boren had a pattern of feeling well at home but sick at work. The trial court also relied upon this evidence. We note that this creates a rebuttable presumption that the employment caused the illness if there is a reasonable possibility of causal connection between the employment and the illness. In the instant case, expert testimony showed that any chemicals to *1195 which Mr. Boren was exposed at work were not in great enough concentrations to create a reasonable possibility of causal connection between Mr. Boren's employment and his illness. Further, we find Louisiana Pacific presented overwhelming expert testimony of causation sufficient to rebut this presumption.
In conclusion, plaintiff urges Harris v. Trailways Southern Lines, Inc., 467 So.2d 109 (La.App. 3rd Cir.1985), writ denied, 470 So.2d 120 (La.1985), in support of her entitlement to death benefits. We disagree. In the Harris case, the decedent went to work sick and the conditions of his employment aggravated his illness; this was proven by a preponderance of the evidence. In the instant case, the record does not support the contention that the conditions of employment aggravated Mr. Boren's illness.
Therefore, we find the trial court committed manifest error in its factual determination that Mr. Boren's employment caused his illness. Accordingly, we conclude that the record does not support the contention that Mr. Boren's last illness was causally related to his employment.

DECREE
For the foregoing reasons, IT IS ORDERED ADJUDGED AND DECREED that the judgment of the trial court is hereby reversed and set aside. Plaintiff's suit is dismissed with prejudice.
REVERSED AND RENDERED.
NOTES
[*] Judge Hugh Ellis Brunson of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.