316 So.2d 440 (1975)
Joseph L. LABORDE, Plaintiff-Appellant,
v.
ROY O. MARTIN LUMBER COMPANY, INC., et al., Defendants-Appellees.
No. 4992.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
Writ Refused October 13, 1975.
*441 William E. Skye, Alexandria, for plaintiff-appellant.
Gold, Hall, Hammill & Little, John F. Simon, Alexandria, for defendants-appellees.
Before FRUGE, HOOD and WATSON, J.
FRUGE, Judge.
This is a workmen's compensation case. The facts are set out in the companion opinion rendered today in Laborde v. Martin et al., 316 So.2d 438 (La.App. 3rd Cir. 1975, No. 4991).
As a result of a job-related injury to his thumb, plaintiff was paid workmen's compensation benefits of $49.00 per week from February 24, 1973 (the date of injury) until May 18, 1973, when payments were terminated. Plaintiff has sued, contending that he is totally and permanently disabled as a result of his injury.
The trial court found that plaintiff was able to return to his normal duties as of May 18, 1973, and denied plaintiff's claim. Plaintiff has appealed.
There is no question that plaintiff received an injury to his thumb while in the course and scope of his employment on February 24, 1973. The only issues presented on this appeal are whether plaintiff is totally and permanently disabled as a result of his injury and, whether the defendant employer was arbitrary and capricious in terminating compensation.
*442 Plaintiff injured his thumb when it was pushed into a heavy stack of lumber while he was attempting to reload a stack of lumber onto the forklift which he drove for the defendant. The facts leading up to the injury are detailed in the companion case rendered today cited supra.
On the day of the accident Laborde was examined by Dr. Humphrey H. Hardy, Jr. who specializes in general surgery. Dr. Hardy found a "deformity of the end of the thumb in which the distal joint had a flexion deformity of approximately 45 degrees." He also found no motion of any significance in the thumb because of pain. Dr. Hardy x-rayed the thumb and found an avulsion fracture which is a slight tearing of bone tissue where the ligaments are attached. Laborde told Dr. Hardy that he had had a previous injury to the thumb which had caused some deformity, although he did have normal use.
Dr. Hardy treated the thumb by reducing the dislocation and placing the thumb in a cast to straighten out the end of it.
Laborde saw Dr. Hardy again on March 5, 1973, at which time the cast was broken. Dr. Hardy found the cast to be "powdered" around the thumb area and said it looked like the cast had been beat on. Dr. Hardy replaced the cast. When he next saw Laborde on April 3, the cast was soaked with water and deteriorated. Dr. Hardy removed the cast and about three weeks later referred Laborde to Dr. C. W. Lowery.
Dr. Lowery is an orthopedic surgeon. He first saw Laborde on April 25. Like Dr. Hardy he found that Laborde was unable to voluntarily straighten the terminal joint (at the base of the nail) of the thumb. He also found some tenderness of the pulp of the thumb (under the nail) and the terminal joint area. After taking x-rays Dr. Lowery placed the thumb in a splint and asked Laborde to return with the x-rays made by Dr. Hardy.
Following Laborde's first visit, Dr. Lowery discovered that he had records from treating Laborde in August, 1969, for a previous injury to the thumb. Upon comparing the x-rays made in 1969 with those he made on Laborde's prior visit, Dr. Lowery found them to be "essentially identical." He concluded that Laborde's major problem had occurred at his first injury, and that the recent accident had not caused any dislocation of the thumb or any avulsion fracture. His diagnosis was revised to a finding that the recent accident had caused a bruised joint of the thumb.
After seeing Laborde again on May 17, Dr. Lowery felt that Laborde could return to work. This conclusion was based on the fact that the bruising and swelling of the thumb had gone away and on the fact that Laborde had been able to work as a forklift operator despite the flexion deformity prior to the 1973 accident.
Dr. Lowery communicated with Dr. Hardy concerning his diagnosis and opinion that Laborde could return to work. Upon learning that the 1969 and 1973 x-rays were essentially similar, Dr. Hardy concurred that Laborde could return to work as of May 18 and so informed Colfax Lumber Company on May 25. Compensation payments to Laborde were thereafter terminated.
Laborde was also seen by Dr. Edwin C. Simonton, an orthopedic surgeon, on August 28, 1973. Laborde complained of loss of strength of grip and a tingling between the index and middle fingers. There was no complaint of pain. Dr. Simonton found the deformity of the terminal joint of the thumb and found, as had Drs. Hardy and Lowery, that Laborde was unable to straighten his thumb. He also found a lack of feeling over the back side of his thumb and index finger. Dr. Simonton testified that he would not expect the type of injury received by Laborde to cause a loss of grip strength. He also stated that his clinical examination did not show that Laborde had any disability.
*443 However, because Laborde did complain of lack of grip strength Dr. Simonton sent Laborde to a physical therapist for a grip test. The grip test showed a weakness in strength in the left hand. Based upon his belief that the grip test was accurate, Dr. Simonton concluded that Laborde had a weakness in his left hand which would prevent him from working a full day as a forklift operator.
Dr. Simonton also was of the opinion that the weakness was caused by the 1973 accident. This opinion was based on the fact that between the 1969 and 1973 accident Laborde was discharged without disability from the Marine Corps and had passed an employment physical at the time he went to work at Colfax Creosoting, and had performed his duties as a forklift operator without any physical difficulty up until the accident.
Laborde was re-examined by Dr. Lowery in November of 1973. At this examination Dr. Lowery gave Laborde a grip test which, he opined, showed that Laborde had sufficient grip in his left hand to operate the levers on a forklift. Although the left hand grip was weaker than that of the right, Dr. Lowery attributed this to the 1969 accident. Dr. Lowery also found callouses on Laborde's left hand which "probably" indicated "strenuous and repetitive work with it." Additionally, measurements of the left upper and lower arm showed "improvement over what had been seen previously" and indicated that the arm had been built up through use.
Several lay witnesses testified on behalf of the plaintiff that after the accident plaintiff favored his left hand and could not perform normal work functions, such as driving, with the left hand except with extreme difficulty.
Testimony was also elicited from William Phillips, Sr., who is a general sign contractor for whom Laborde worked after the accident. Mr. Phillips testified that Laborde performed various functions of his work such as digging post holes, using hand saws and hammers, and helping take down signs without difficulty. This was also confirmed by his son, William Phillips, Jr., with whom Laborde worked.
The determination made by the trial court that Laborde was not totally and permanently disabled and could return to work as of May 18, 1973, involves a question of fact. As a reviewing court we can reverse a finding of fact upon a showing of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Appellants contend that this court should place great weight upon lay testimony as to plaintiff's disability in view of the conflicting medical testimony. Such testimony is entitled to great weight in these circumstances. Launey v. Lawton Forest Products, 309 So.2d 901 (La.App. 3rd Cir. 1975); Johnson v. Cajun Enterprises, 293 So.2d 617 (La.App. 3rd Cir. 1974); Reason v. Joan of Arc Co., 285 So.2d 332 (La.App. 3rd Cir. 1973).
In this case several lay witnesses who have worked with Laborde since the accident testified as to the pain and disability Laborde suffered in his left hand. However, there was also lay testimony that Laborde performed functions such as post hole digging and carrying heavy signs which required the use of the left hand. Therefore, the lay testimony concerning plaintiff's disability, like the medical testimony, is conflicting.
Appellants contend also that consideration must be given to the fact that in between the 1969 and 1973 thumb injuries, plaintiff served in the United States Marine Corps, passed his physical examination, and was discharged honorably with no disability. Plaintiff also relies on the fact that he passed a physical exam upon beginning work for Colfax Creosoting. He argues that he is now unable to operate a forklift and that this disability was caused by the 1973 accident since he had no disability prior to that accident.
*444 We agree that the above facts show that plaintiff was not disabled prior to the 1973 accident. However, the question before us is whether plaintiff is totally and permanently disabled because of the 1973 accident.
In this case the two treating physicians (one an orthopedic surgeon) found the plaintiff was able to return to work as of May 18, 1973. This finding is disputed by the finding of Dr. Simonton who examined plaintiff several months after the accident. Dr. Simonton admitted, however, that he could find no clinical explanation for the disability.
Where there is conflicting medical evidence regarding disability the testimony of the treating physician is entitled to great weight. Launey v. Lawton Forest Products, 309 So.2d 901 (La.App. 3rd Cir. 1975); Moulard v. Massman Construction Company, 209 So.2d 742 (La.App. 3rd Cir. 1968). The trial court committed no error in relying on the testimony of the treating physicians in this case.
While lay testimony is entitled to consideration where there is conflicting medical evidence, the lay testimony in this case is conflicting. Where the credibility of witnesses is at issue the findings of the trial court in that regard are entitled to great weight. Canter v. Koehring Company, supra.
We can reverse the findings of the trial court only upon a showing of manifest error. In this case there is ample evidence from which the trial court could conclude that plaintiff was not totally and permanently disabled as a result of the 1973 accident. We find no manifest error.
We also conclude that no error was committed in finding that plaintiff is not entitled to penalties and attorney's fees. Compensation benefits were terminated only after Clyde Norton received a call from Dr. Hardy notifying Colfax Creosoting that plaintiff was fit to return to work.
Appellant argues that this phone conversation is inadmissible as hearsay. We do not find this to be the case. The testimony of Norton as to the phone call was not used as proof of Laborde's disability which would be a hearsay use. The testimony was used to establish that the phone conversation had taken place and that Colfax Creosoting had received notification that Laborde was no longer disabled. This is not a hearsay use as it was not used to prove the truthfulness of the contents of the message. We note also that the fact that the call was made was also corroborated by Dr. Hardy although he testified that he spoke with a B. C. Estes rather than with Norton.
Plaintiff is entitled to penalties and attorney's fees only if Colfax Creosoting was "arbitrary, capricious, or without probable cause" in discontinuing compensation. La.R.S. 23:1201.2. In this case compensation benefits were stopped only after receipt of a phone call from the treating physician that Laborde was recovered from his injury and able to return to work. See Hebert v. South Louisiana Contractors, Inc., 238 So.2d 756 (La.App. 1st Cir. 1970). We agree with the trial court that Laborde is not entitled to penalties and attorney's fees.
For the reasons assigned the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
My review of the record, and especially the medical evidence, indicates that the trial court erred in approving the termination of compensation payments on May 25. The attending physician, Dr. Hardy, and the orthopedic to whom plaintiff was referred by Dr. Hardy, Dr. Lowery, both indicated *445 that plaintiff was not recovered by that date, as I read their testimony. In addition, the testimony of Dr. Simonton, the orthopedic whom plaintiff consulted, and the testimony of the lay witnesses support plaintiff's contention that he continued to be disabled subsequent to May 25.
I believe that the record establishes clearly that plaintiff was disabled and should have been paid compensation benefits through November 30, and I would amend the judgment to allow such payments.
Therefore, I respectfully dissent.