430 So.2d 1255 (1983)
Troy W. SHATOSKA
v.
INTERNATIONAL GRAIN TRANSFER, INC.
No. 82 CA 0772.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Rehearing Denied May 20, 1983.
*1257 Edward Shamis, Jr., Slidell, for plaintiffappellee.
*1258 A. Clay Pierce, Jr., Baton Rouge, for defendant-appellant.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit for workmen's compensation benefits for total and permanent disability, medical payments and statutory penalties. Judgment was rendered in the trial court in favor of the employee awarding him compensation benefits for total and permanent disability,[1] recognizing his entitlement to medical benefits,[2] fixing the attorney fee to which his counsel is entitled,[3] granting him legal interest from date of judicial demand "for all monies awarded under this judgment", and casting the employer and its insurer for all costs. The trial court denied the claim for statutory penalties. This suspensive appeal followed. The employee answered the appeal seeking statutory penalties and a recognition of his entitlement to future medical expenses as they occur.

FACTS
In May of 1980, Troy Shatoska was employed as a dragline (crane) operator by International Grain Transfer, Inc. (International). The Rockwood Insurance Company (Rockwood) was the workmen's compensation insurer of International. On May 6, 1980, Shatoska went to work at 6:00 A.M. During the day, Shatoska felt badly and had pains on two occasions, once while lifting a ship hold cover, and once while operating the dragline. When the dragline crew commenced changing a section of the dragline's boom, Shatoska stayed inside the cab of the dragline and did not do the outside manual labor. He complained several times during the day of headache, tightness in the chest and indigestion. The crew worked until midnight on May 6, 1980. Shatoska went home with his son, ate supper and went to bed.
At approximately 4:30 A.M. on May 7, 1980, Shatoska was awakened by severe chest pains and pain under his armpits. His son rushed him to the emergency room of the East Ascension Hospital in Gonzales, Louisiana. His condition was diagnosed as a sub-endocardial infarction (a form of heart attack). Shatoska remained in the hospital until he was discharged on May 18, 1980, when he was released and referred to his private physician.
On June 9, 1980, Shatoska consulted Dr. R.R. Howard, a specialist in cardiology and internal medicine. He gave a history of sub-endocardial myocardial infarction. Dr. Howard gave him medication for this condition. Shatoska again visited Dr. Howard on July 7, 1980. He had no discomfort and his EKG showed improvement. Dr. Howard continued him on his medication. Shatoska again saw Dr. Howard on August 18, 1980, and complained of numbness in his hands. Dr. Howard advised him to try light work, but that he was not capable of doing heavy strenuous activities. Dr. Howard described Shatoska's condition as indicating progrometer warnings (possible future problems). On September 29, 1980, Shatoska again visited Dr. Howard and gave a history of feeling weak, but with no fainting spells.
On November 6, 1980, Shatoska visited Dr. Howard and gave a history of pain associated with some old rib fractures. Examination revealed no evidence of angina at that time. On November 7, 1980, Shatoska was admitted to the coronary intensive care unit of the Slidell Memorial Hospital suffering with what was diagnosed as an acute anterolateral myocardial infarction (heart attack). He gave a history of working on his boat which precipitated this condition. Shatoska remained in the hospital until he was discharged on November 18, 1980.
*1259 Shatoska testified that in October of 1981, he commenced working for Lake Contractors as a dragline operator making $9.00 an hour for doing the same type of work that he did for International. He was doing this same type of work on the date of the trial, January 15, 1982. Prior to October of 1981, he also worked as a dragline operator for Used Machinery in Slidell, Louisiana, receiving $9.00 per hour and doing the same type of work that he was doing for International.

ACCIDENT
If an employee receives personal injury by accident arising out of and in the course of his employment, his employer is liable for compensation benefit and medical payments. La.R.S. 23:1031. An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. An accident arises out of the employment when it results from some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. When the performance of the usual and customary duties of a workman causes or contributes to a physical breakdown, the statutory requirements for an "accidental" injury are present. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). Heart disease and heart attacks caused by the work done by an employee are "accidents" and are compensable under the Louisiana Workmen's Compensation Law. Adams v. New Orleans Public Service Inc., 418 So.2d 485 (La.1981); Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975).

CAUSATION
The chain of causation required by La.R.S. 23:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability. Where there is proof of an accident and of the following disability without any intervening cause, it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability. Guillory v. United States Fidelity & Guaranty Insurance Company, 420 So.2d 119 (La.1982). The burden is on an employee to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to the heart accident.[4] If the activities in which the worker is engaged entail exertion, stress or strain greater than would be involved in everyday nonemployment life and he experiences a heart accident, he has made a prima facie showing that the accident arose out of, or was connected with, the employment. Guidry v. Sline Industrial Painters, Inc., supra, 418 So.2d at 633.
The issue of whether or not Shatoska's employment caused his heart attack (accident) was intensely litigated in the trial court. Shatoska testified that he reported for work at 6:00 A.M. on May 6, 1980. He and his crew worked an 18 hour shift and left work at approximately midnight. He did not feel well all day. He attributed his discomfort to indigestion. He experienced chest pains sharper than any he had experienced before. He first experienced the pain while operating the dragline and subsequently when he was moving hatch covers.
Keith Roche, the night foreman for International, testified that his crew was working maintenance on May 6, 1980. He was aware that Shatoska did not feel well all day. Shatoska complained of indigestion and headache and was allowed to remain in the cab of the dragline instead of doing the usual and customary work.
Ronnie Shatoska, plaintiff's son, testified that his father complained of pains in his *1260 chest during the day which he attributed to indigestion. When the shift was over at midnight, Ronnie drove his father home in his father's truck because his father did not feel well. They went straight home, ate and went to bed. Ronnie's wife awakened him at about 4:30 A.M. on May 7, 1980, and advised him that his father was in severe pain. He drove his father to the East Ascension Hospital where he received treatment.
Lynn Shatoska, plaintiff's brother, testified that he operated a dragline on the same shift. His testimony corroborates the other testimony regarding Troy Shatoska's symptoms on May 6, 1980. Lynn also testified that Troy talked of a tight feeling in his chest when they climbed the levee to get their vehicles to go home.
Shatoska's treating physician, Dr. R.R. Howard, testified as follows:
"Q Yes, sir. Do you feel that the condition that he suffers from now and which he suffered from when you first saw him was a result of the work that I just described to you?
"A Now, you're getting into the old dogmatic problem that we have had since antiquity, of which comes first. He has hardening of the arteries and then the coronary arteries. The work certainly would aggravate it, but that is not really ait is a cause, but it is not the actual cause. The actual cause is his aging process and the arthrogenesis of his coronary arteries causing an occlusion, lack of blood supply to a particular area of his heart. The heart muscle dies and an infarction occurs. This is a heart attack. It can be precipitated by exertion, it can be precipitated by stress of any sort. That is the best answer I could give you." (Emphasis added).
After considering the above evidence, the trial judge determined that Shatoska suffered an on-the-job episode with his heart on May 6, 1980, which progressed to be a heart attack in the early morning hours of May 7, 1980, without intervening causes. This factual determination by the trial judge is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). See, for example, Chapman v. Belden Corporation, 414 So.2d 1283 (La.App. 3rd Cir.1982).
In addition to proving that his employment caused his "accident", a claimant in a workmen's compensation case must also prove that the "accident" caused his injury and the injury caused his resulting disability. An employee's disability will be presumed to have resulted from an employment accident if before the accident the employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves. The evidence must show that there is a reasonable possibility of causal connection between the accident and the disabling condition. This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it. Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829, 831 (La.1982). The medical evidence of record shows that Shatoska was in reasonably good health prior to the heart attack of May 6-7, 1980, that commencing with this heart attack, his disabling condition appeared and continuously manifested itself through the heart attack of November 7, 1980, and until the time of trial. The two heart attacks permanently damaged Shatoska's heart and caused him a degree of disability. The defendants have presented no evidence to rebut either the legal presumption or the medical evidence presented. Shatoska has thus satisfactorily proven a causal relationship between his employment and subsequent disability.

DISABILITY
A workmen's compensation claimant is totally and permanently disabled if he is unable to engage in any gainful employment. La.R.S. 23:1221(2). Louisiana has also adopted the "odd-lot" *1261 doctrine which provides that a claimant is also totally and permanently disabled if he can establish that because of his physical impairment and other factors, such as mental capacity, education, and training, he can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). A claimant who is able to engage in some employment, though not necessarily the type of employment he was engaged in at the time of the accident, is considered to be only partially disabled. La.R.S. 23:1221(3); Dodd v. Nicolon Corporation, 422 So.2d 398 (La.1982); Stracener v. United States Fidelity & Guaranty Company, 420 So.2d 1101 (La.1982). The claimant in a workmen's compensation proceeding bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Daney v. Argonaut Insurance Company, 421 So.2d 331 (La.App. 1st Cir.1982).
The testimony of Dr. Howard concerning the nature and extent of Shatoska's disability, in pertinent part, is as follows:
"Q Okay. I see, sir. And continue on, if you would, with your letter of April 29th. Is there any other information in there that would be indicative of the duration of Mr. Shatoska's condition?
"A Well, he's to restrict his physical activity because of the cardiac problem which is permanent and will be under care indefinitely.
"Q Do you or would you term this probably a permanent condition?
"A Yes.
"Q Would it be in your view permanently disabling?
"A Disabling to do heavy physical exertaion (sic). I will just leave it right there."
Although Dr. Howard testified that Shatoska was disabled from doing work that involved "heavy physical exertion", he did not testify that Shatoska was disabled from engaging "in any gainful occupation for wages." La.R.S. 23:1221(2). Dr. Howard was of the opinion "... that it would be dangerous and detrimental to his physical well-being now and in the future..." for Shatoska to operate a dragline. However, he was also of the opinion that Shatoska could safely operate an automobile.
At the time of his heart attack in May of 1980, Shatoska was earning $10.00 per hour as a dragline operator for International. At the time of the trial, although his doctor was of the opinion that it was potentially dangerous and detrimental to his health, Shatoska was working as a dragline operator earning $9.00 per hour. He had been working in this capacity for approximately six months prior to the trial date.
Based on the evidence presently before us, we are unable to properly adjudicate the nature and extent of the employee's disability. The employee has introduced no evidence to show whether or not the services that he may safely render in his present condition are so limited in quality or dependability that a stable market for his labor does not exist, and is thus totally and permanently disabled under the "odd-lot" doctrine.
If Shatoska is not permanently and totally disabled, then he is permanently and partially disabled within the purview of La. R.S. 23:1221(3). We are mindful that La. R.S. 23:1221(3) provides that compensation benefit payments based on permanent, partial disability are to be calculated at "sixtysix and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, ...". However, we do not believe that it was the intention of the legislature that this language was to be literally applied in a situation *1262 where an employee is earning wages by doing work that is dangerous and detrimental to his health. If Shatoska falls in this category, his entitlement to benefits should be based on the difference between the wages he was earning at the time of the injury and any lesser wages that he could safely earn in a gainful occupation. We do not believe that it would be a good public policy to calculate permanent, partial disability benefits based on wages earned by an employee who is engaged in work which is dangerous to his health.
We are most reluctant to remand matters to trial courts to take additional evidence because this further delays a final decision in the case. However, because of the peculiar facts and circumstances of the instant case, we believe that the interest of justice requires a remand. See, for example, Gardner v. Minnie, Inc., 339 So.2d 1247 (La.App. 1st Cir.1976). On the remand, the parties are ordered to present evidence on the following issues:
(1) Are the services which Shatoska is capable of safely rendering in his present condition so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete?
(2) If the answer to question number 1 is "No", then at what point in time did Shatoska reach maximum recovery for determining his entitlement to temporary, total disability payments pursuant to La.R.S. 23:1221(1) and what is his entitlement to benefits for permanent, partial disability pursuant to La.R.S. 23:1221(3) based on his present capacity to safely engage in a gainful occupation for wages?

STATUTORY PENALTIES
Under La.R.S. 22:658, if the insurer of an employer fails to make workmen's compensation benefit and medical payments, and this failure is found to have been arbitrary, capricious, or without probable cause, the insurer may be compelled to pay a penalty of 12% of the total amount of the claim, together with all reasonable attorney fees incurred by the claimant in the prosecution of the claim.[5] This statute is penal in nature and must be strictly construed. It should be utilized only in those instances in which the facts negate probable cause for nonpayment. The burden is on the claimant to prove entitlement to penalties. Hammond v. Fidelity & Casualty Company of New York, supra; Moore v. Millers Mutual Fire Insurance Company of Texas, 406 So.2d 708 (La.App. 2nd Cir.1981), writ denied 410 So.2d 1132 (La.1982); Batiste v. Pointe Coupee Constructors, Inc., 401 So.2d 1263 (La.App. 1st Cir.1981), writ denied 409 So.2d 615 (La.1981). Where there is a serious defense presented in good faith, the assessment of the statutory penalties is not appropriate. Furtado v. Alton Ochsner Medical Foundation, 413 So.2d 528 (La.App. 4th Cir.1982), writ denied 420 So.2d 171 (La.1982).
The trial judge denied the claim for statutory penalties because "Travellers (sic) Insurance Company was the group medical insurer of defendant, International Grain, as well as the workmen's compensation insurer" and paid Shatoska's medical bills and certain disability benefits, and because "when the original medical claim was filed it indicated that plaintiff had suffered a heart attack, but that it was not job related." The record shows that Travelers had the International group health policy and paid Shatoska's medical bills and expenses under that policy's extended benefits coverage. Rockwood, and not Travelers, was the workmen's compensation insurer of International.
However, the dismissing of the claim for statutory penalties was correct. *1263 The issues of whether or not Shatoska's employment caused his heart attack, and the nature and extent of Shatoska's disability, are serious issues upon which reasonable persons could disagree. Rockwood presented serious defenses in good faith on these issues and did not act arbitrarily, capriciously or without probable cause.

CONCLUSION
For the foregoing reasons, the judgments of the trial court which determined that Shatoska's employment caused his heart attacks and ultimate disability, recognized that Shatoska was entitled to medical benefits, fixed the fee due by Shatoska to his attorney, fixed the base rate upon which compensation benefits would be calculated, and cast the defendants for all costs in the trial court, are correct and are affirmed. That portion of the trial court judgment that determined Shatoska to be totally and permanently disabled is reversed and this issue is remanded to the trial court for further proceedings consistent with this opinion. The judgment of the trial court granting the employee legal interest from date of judicial demand for all sums awarded is not correct. Legal interest should be awarded on each weekly compensation benefit from its date due until paid. Crockett v. St. Paul Insurance Company, 413 So.2d 949 (La.App. 1st Cir.1982). The appellants are cast for all costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Weekly benefits would be based on a weekly wage of $311. La.R.S. 23:1221(2) and 23:1202(1).
[2] La.R.S. 23:1203.
[3] La.R.S. 23:1141.
[4] Proof by a preponderance of evidence exists when the evidence taken as a whole, shows that the fact sought to be proved is more probable than not. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
[5] The penalty provisions of La.R.S. 23:1201.2 are applicable to employers only when they are not adequately covered by insurance. Chipman v. Insurance Company of North America, 389 So.2d 432 (La.App. 2nd Cir.1980); Wiley v. Southern Casualty Insurance Company, 380 So.2d 214 (La.App. 3rd Cir.1980); Gauthier v. Employers National Insurance Company, 316 So.2d 769 (La.App. 1st Cir.1975), writ refused 320 So.2d 911 (La.1975).