442 So.2d 536 (1983)
Harley THORNELL
v.
PAYNE AND KELLER, INC. and Aetna Casualty & Surety Company.
No. 83 CA 0077.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Rehearing Denied December 22, 1983.
Writ Denied February 27, 1984.
*538 Carey J. Guglielmo, Baton Rouge, for defendant-appellant Payne and Keller, Inc. and Aetna Cas. & Sur. Co.
Stephen C. Riedlinger, Baton Rouge, for plaintiff-appellee Harley Thornell.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit for workmen's compensation benefits and statutory penalties alleging that the employee is totally and permanently disabled by an occupational disease (silicosis). The employer and its insurer answered the suit and filed a peremptory exception pleading prescription. They also filed a third party demand for indemnification or contribution from the employee's previous employer and its insurer alleging that the prior employment caused the occupational disease. The previous employer and its insurer filed a peremptory exception of no cause of action to the third party demand.
The trial court overruled the plea of prescription and held that the employee's occupational disease was causally related to his last employment, that the employee was totally and permanently disabled, that the *539 employer and its insurer acted arbitrarily, capriciously and without probable cause in withholding compensation benefit payments and awarded the employee statutory penalties which included an attorney fee of $6,000. The trial court further determined that the employee's prior employment was also causally related to his occupational disease but, as a matter of law, the employer had no cause of action against the previous employer and its insurer for contribution or indemnification and sustained their exception. This suspensive appeal followed.

FACTS
In March of 1950, at the age of sixteen, Harley Thornell commenced working for Service Painting Company of Beaumont, Inc. (Service) and remained with them intermittently until March of 1974. During this 24 year interval, he worked 134 months for Service as a sandblaster-painter. During the last 18 months of this employment, he did no sandblasting because he was a working foreman.
During his employment with Service, Thornell used no protective device until 1968 or 1969. At that time, he commenced using an air hood, a protective device that fits over the head, extends down to the waist and provides an air supply. The hood was only used when sandblasting and not while performing other work.
In March of 1974, Thornell began working for Payne and Keller, Inc. (P & K) as a sandblaster-painter. P & K did not require a physical examination prior to this employment. For the first three or four months of this employment, Thornell was furnished with a desert hood while performing his work. A desert hood is a face mask with no independent air supply. Thereafter, he was furnished with an air hood. After several months, Thornell was promoted by P & K to the position of foreman in which he did no actual sandblasting except in demonstrations to subordinates. Thornell was subsequently promoted to supervisor which enlarged his sphere of responsibility. While acting as foreman and supervisor, Thornell occupied a shed in the area where sandblasting was conducted. He wore no protective device while discharging his duties as foreman and supervisor.
In 1975, Thornell was referred by his family doctor, Dr. Raymond Benski, to Dr. A.W. Harrison, a specialist in thoracic and general surgery, because Dr. Benski found a shadow on Thornell's chest X-ray. Dr. Harrison first saw Thornell on November 21, 1975, and admitted him to a hospital for diagnostic testing during the period of December 1-10, 1975. Dr. Harrison could not determine that Thornell had cancer or tuberculosis but did find silicosis present in both of his lungs. Thornell was referred back to Dr. Benski. There is no evidence to indicate that Thornell was advised not to continue working in contact with sandblasting or where he would be exposed to silica dust. Thornell continued to work for P & K.
On October 13, 1980, Thornell went to Dr. Arthur T. Pederson, a specialist in internal medicine and allergies, with complaints of severe chest pains, numbness in the left arm, frequent urination, coughing, episodes of epigastric discomfort and allergy. Dr. Pederson, in cooperation with Dr. Martin L. Kaplan, committed Thornell to a hospital during October 21-25, 1980, for diagnostic testing. Drs. Pederson and Kaplan diagnosed Thornell's condition as chronic and mild silicosis of both lungs and irritable chronic bronchitis. They recommended that Thornell avoid exposure to sand and discontinue cigarette smoking. He had smoked two or three packs of cigarettes per day for 30 years, and this was a contributing factor in his lung condition. Thornell was advised not to resume any sandblasting activities or be employed where there was silica dust. Dr. Pederson was of the opinion that Thornell could do strenuous work in a proper environment, that is, in a place sand free and where irritating fumes were kept to a minimum.
At the beginning of November 1980, Thornell reported to his supervisor at P & K, Kent Mitchum, that he had silicosis and could no longer work around sandblasting.
*540 At first, Mitchum proposed to send Thornell to a new location but subsequently laid him off. Thornell then applied for work with Service but was told that he could not be hired in any capacity because of his condition. This suit was filed on April 13, 1981.

PRESCRIPTION
P & K contends that Thornell's workmen's compensation claim is prescribed by the six months prescriptive period of La.R.S. 23:1031.1(E) because the silicosis manifested itself in the late 1960's, this condition was diagnosed by Dr. Harrison in 1975, and he had reasonable grounds to believe that the silicosis was occupationally related.
Prior to July 24, 1980, La.R.S. 23:1031.1(E)[1] provided as follows:
All claims for disablement arising from an occupational disease are forever barred unless the employee files a claim with his employer within four months of the date of his contraction of the disease or within four months of the date that the disease first manifested itself. Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
The jurisprudence interpreting this statutory provision held that the mere knowledge by an employee that he had an occupational disease was not a manifestation of disability and the prescriptive period did not commence to run until the employee's employment actually terminated because of disability resulting from the occupational disease. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La. 1979); LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967); 1 W. Malone & H. Johnson, Workers' Compensation Law and Practice § 221 in 13 Louisiana Civil Law Treatise 468-475 (1980). Effective July 24, 1980, Act 666 of 1980 amended La.R.S. 23:1031.1 to provide in paragraphs E and I as follows:
E. All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
. . . . .
I. Notice of the time limitation in which claims may be filed for occupational disease or death resulting from occupational disease shall be posted by the employer at some convenient and conspicuous point about the place of business. If the employer fails to post this notice, the time in which a claim may be filed shall be extended for an additional six months.
It appears that the purpose of this amendment to the law was to codify a good deal of the prior jurisprudence interpreting La. R.S. 23:1031.1(E). See note 89 at page 37 of the 1983 pocket part for 1 W. Malone & H. Johnson, Workers' Compensation Law and Practice § 221 in 13 Louisiana Civil Law Treatise (1980). An examination of La.R.S. 23:1031.1(E) shows that parts (a), (b) and (c) are not separated either by the disjunctive article "or" or by the conjunctive article "and". It is well settled that the provisions of the workmen's compensation statute should be liberally interpreted in favor of workers. Campbell v. Fidelity & Casualty Co. of New York, 339 So.2d 339 (La.1976); Woodard v. J & M Seafood Restaurant, 413 So.2d 536 (La.App. 4th Cir.1982); Johnson v. Aetna Casualty & Surety Co., 387 So.2d 1340 (La.App. 1st Cir.1980), writ denied 393 So.2d 746 (La. 1980). After reviewing the prior jurisprudence and applying the above principle of construction, we conclude that parts (a), (b) and (c) of La.R.S. 23:1031.1(E) must be construed in the conjunctive (rather than *541 the disjunctive) and that the existence of all three are necessary for the prescriptive period of that statute to commence. In the instant case, all three of these conditions did not exist until the diagnostic procedures were completed by Drs. Pederson and Kaplan during the latter part of October 1980.
The party pleading prescription has the burden of proving it. Langlinais v. Guillotte, 407 So.2d 1215 (La.1981). La. R.S. 23:1031.1(I) provides that if the employer fails to post a notice of the time limitation in which workmen's compensation claims may be filed for occupational diseases, the six months prescriptive period of La.R.S. 23:1031.1(E) shall be extended for an additional six months. There is no evidence in the record to show that the required notice was posted. Thornell learned that he was disabled from further work with P & K on October 25, 1980. This suit was filed on April 13, 1981, five months and nineteen days later. The ruling of the trial court dismissing the employer's plea of prescription is correct and this specification of error is without merit.

CAUSATION
P & K contends that Thornell contracted the silicosis during his employment with Service and that his employment with P & K was not a causative factor in the development of the disease.
An employee has the burden of proving that he contracted an occupational disease as a result of his employment. Howard v. Johns-Manville Sales Corporation, 420 So.2d 1190 (La.App. 5th Cir.1982). Paragraphs A and B of La.R.S. 23:1031.1 provide as follows:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, ... shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.
(Emphasis added).
If the employee fails to establish a causal relationship between his employment and the occupational disease, he cannot prevail. Page v. Prestressed Concrete Company, 399 So.2d 657 (La.App. 1st Cir.1981), writ not considered, 401 So.2d 994 (La.1981); Laurendine v. Fischbach & Moore, Inc., 398 So.2d 1220 (La.App. 4th Cir.1981). Occupational diseases (like silicosis) may develop gradually over an extended period of time. 1 W. Malone & H. Johnson, Workers' Compensation Law and Practice § 219 in 13 Louisiana Civil Law Treatise 457-462 (1980). During the course of the development of the occupational disease and prior to the time that it manifests itself as disabling, a worker may change his employment from that which causes the disease to one that does not. In such a case, the prior employer whose work is causally related to the occupational disease is responsible for compensation benefit payments to the employee. Chivoletto v. Johns-Manville Products Corporation, 330 So.2d 295 (La. 1976). Also during the course of the development of an occupational disease, the employee may be employed by two or more employers whose work is causally related to the development of the occupational disease. In this situation, the last employer whose work is a causative factor in the development of the occupational disease is responsible for compensation benefit payments. Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1982). However, if an employee worked for an employer for a period of less than twelve months, he cannot prevail against that employer unless he demonstrates by an overwhelming preponderance of the evidence that the occupational disease was "contracted" during that employment. La.R.S. 23:1031.1(D); Hanlon v. Sline Industrial Painters, Inc., 358 So.2d 700 (La.App. 3rd Cir.1978), writ denied 360 So.2d 1177 (La.1978); Covington *542 v. Rex Painting Inc., 315 So.2d 368 (La. App. 4th Cir.1975), application denied 320 So.2d 558 (La.1975).
Dr. Hans Weill, an expert in the field of pulmonary diseases and specializing in silicosis, testified that sand used in sandblasting breaks up on impact with hard objects and forms minute particles of silica. The inhalation of these particles of silica without adequate protection may cause silicosis. Simply stated, silicosis is an occupational disease which impairs the ability of the lungs to function properly. The rate of progression of silicosis is controlled by the concentration of the dose inhaled and the length of time that the inhalation takes place. Although the record shows that Thornell was exposed to some degree of silica inhalation during his employments with Service and P & K, there is no evidence to show specifically the concentrations of the silica that he inhaled at different times.
Thornell worked for Service for 134 months during the 24 year period from 1950 to 1974. During most of this time, he worked as a sandblaster and did not commence using a protective air hood until 1968 or 1969. Thornell was diagnosed by Dr. Harrison as having silicosis in November of 1975. Dr. Weill was of the opinion that Thornell developed silicosis sometime before the 1970's. Dr. Weill was also of the opinion that the major contribution to Thornell's silicosis came from the silica exposure prior to 1974. This evidence establishes that Thornell's employment with Service was a causative factor in the development of his occupational disease. However, the silicosis did not become disabling for Thornell until October of 1980. At issue is whether or not Thornell's employment with P & K was also a causative factor in the development of his silicosis. Carter, 415 So.2d at 176.
Thornell was hired by P & K in March of 1974 as a sandblaster-painter. For three or four months, he worked long hours per day, sometimes seven days a week, using only a desert hood. In November of 1974, he was promoted to supervisor of painting and worked in an area where sandblasting occurred without wearing either an air or a desert hood. Thornell's office was in the middle of the sandblasting yard and silica dust constantly got into this office. During the period of November of 1974 until October of 1980, Thornell wore no protective device while discharging his duties as foreman or supervisor. The report of Dr. Weill, dated April 14, 1981, filed in the record, contains the following observation:
... It is not necessary to do abrasive blasting to have crystalline silica exposure, and in fact, very often, supervisors and others in proximity to sandblasting are at substantial risk since they are usually inadequately protected....
The testimony of Charles Keys, plant manager for the Placid Refining Company where the P & K operations were conducted, corroborated Thornell's testimony about his working conditions. In Carter, 415 So.2d at 181, appears the following:
... Drs. Weill and Brown both testified that the concentration of particles was the determining factor in the contraction of silicosis. They also stated that visible dust particles were indicative of an even greater number of invisible particles....

. . . . .
The testimony of Dr. Weill concerning the causal relationship between Thornell's employment with P & K and the development of the silicosis is as follows:
Q You mentioned also that Mr. Thornell in all likelihood would still have mild silicosis even if he had not ever gone to work for Payne & Keller?
A Yes, sir.
Q Do you rule out that working for Payne & Keller has contributed to the degree of silicosis which he has now?
A I couldn't exclude some contribution to the respiratory status that we see now.
Q Depending upon dosage and things like that?
A Right.

*543 Q Would you also have the same opinion regarding the degree of functional impairment caused by additional inhalation of the silicone dust?
A Yes.
Q In other words, although he would have still have silicosis he may have a worse case because of working for Payne & Keller and he may be more functionally impaired working for Payne & Keller?
A Yes, I think those statements are true. Again, the probability is that the major contribution for all the reasons I think we've already discussed would have come from the exposures prior to that.
Q And just to make it clear, that's without the benefit of specific data regarding dosages?
A Yes.
The trial court concluded Thornell's exposure to silica dust of an undetermined concentration during his employment with P & K from March of 1974 to October of 1980, was causally related to the development of his disabling silicosis in October of 1980. We have carefully reviewed all of the evidence of record, and although this is an extremely close factual question, there is an evidentiary basis for this ruling and it is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This assignment of error is without merit.

DISABILITY
P & K contends that the trial court committed error by finding that Thornell was totally and permanently disabled and not permanently partially disabled. The case of Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982) is cited as authority.
An employee who is disabled because of an occupational disease is entitled to compensation benefit payments the same as if he received personal injury by accident. La.R.S. 23:1031.1(A). A workmen's compensation claimant is totally and permanently disabled if he is unable to engage in any gainful employment. La. R.S. 23:1221(2). Louisiana also has adopted the "odd-lot" doctrine which provides that an employee is totally and permanently disabled if he can establish that because of his physical impairment and other factors, such as mental capacity, education and training, he can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). An employee who is able to engage in some employment, though not necessarily the type of employment he was engaged in at the time of the accident, is considered to be only partially disabled. La.R.S. 23:1221(3); Dodd v. Nicolon Corporation, 422 So.2d 398 (La.1982); Stracener v. United States Fidelity & Guaranty Company, 420 So.2d 1101 (La.1982). The claimant in a workmen's compensation proceeding bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Daney v. Argonaut Insurance Company, 421 So.2d 331 (La. App. 1st Cir.1982).
We adopt as our own the following discussion of the employee's disability found in the excellent reasons for judgment of the trial judge:
The medical evidence shows overwhelmingly that plaintiff is disabled from working in the presence of silica particles or any similar environment because he is suffering from chronic and mild silicosis which would be aggravated by such an environment.
Dr. Pederson was of the opinion plaintiff could do strenuous work in a proper area meaning an environment free of silica dust and also free of fumes because of plaintiff's accompanying chronic bronchitis.
Dr. Martin L. Kaplan expressed the view that he would grade the severity of plaintiff's *544 silicosis "more as a matter of functional impairment and in functional impairment it did not seem that Mr. Thornell was severely or even moderately severely impaired."
In essence, Dr. Hans Weill agreed with Doctors Pederson and Kaplan concerning the severity of plaintiff's silicosis. He was of the further view that some forms of strenuous work would cause plaintiff difficulty.
Plaintiff's testimony is that he was first told by his family physician, Dr. Benski, in 1975 that plaintiff had silicosis. Dr. Benski did not advise plaintiff to stop sandblasting at that time and plaintiff continued working without discomfort or difficulty until 1979 when he began experiencing chest pains. Plaintiff also testified that since October, 1980 he has constant chest pains. Any exertion in hot weather makes him short winded and impairs his breathing. He gets along fine during cool weather. He is unable to run or mow his grass.
Plaintiff's claim for total disability benefits is based on the odd lot doctrine as originally pronounced by our Supreme Court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). Under the odd lot doctrine, an injured employee is entitled to benefits for total permanent disability if he can show that because of physical impairment, lack of education, age, availability of employment in his area and any other relevant factors, that he cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity and that the services he is capable of rendering are so limited in quality, quantity or dependability that a market for his labor does not exist within which he can reasonably compete. On such a showing plaintiff makes a prima facie case for classification in the odd lot category. Upon producing such proof plaintiff is entitled to benefits for total permanent disability unless the employer shows that there are jobs which will provide plaintiff a steady income or a gainful occupation.
Plaintiff, is 49 years of age, started but did not complete the 10th grade in high school. He began work at age 16; he has had no vocational training. He has had employment experience as a truck driver, warehouseman and as a laundry man during his military career. During the last four or five years of his employment with P & K, during which time plaintiff served as foreman and later supervisor of sandblasters, plaintiff kept time records and made out payrolls for the men under his supervision. Plaintiff contends he can barely read. Since becoming disabled in October, 1980, plaintiff drew unemployment compensation until October, 1981. Since October, 1981, plaintiff has applied for work as truckdriver, warehouseman, bricklayer; he also applied for work in self-service grocery stores and auto supply stores without success. He contends he can do only inside work in an air conditioned environment and which requires no heavy lifting.
Curtiss Charrier, Rehabilitation and Vocational consultant, took plaintiff's work history and other data and made an evaluation. His testing of plaintiff disclosed that plaintiff reads at a level of approximately grade 5; has a spelling level of grade five and one half; and has a math level of grade four and one half, placing plaintiff in the category of below 50 percentile of average. Aptitude tests resulted in a score of below 20% in all but one category. In short, Mr. Charrier found that plaintiff has no transferrable skills which he could use in any area outside his regular employment as sandblaster-painter. He found that while plaintiff is physically capable of doing some work, he is limited in that he cannot stand exposure to silica particles or fumes. He found that plaintiff has no mechanical skills and possesses manipulative skills common to ordinary laboring jobs. In effect, he found that plaintiff can do only special situation jobs for which there is very little demand thus effectively taking plaintiff out of the labor market.

*545 Considering all the evidence, the Court finds that plaintiff falls into the odd lot category because of his silicosis, his lack of training and skill in all but his career profession which skill is not transferrable to any other work except common labor which plaintiff can perform only in special environmental conditions, for which type of work there is a limited market.
The trial judge correctly determined that Thornell presented a prima facie case that he was an "odd-lot" employee. Upon this showing, the burden shifted to P & K to prove otherwise. Oster, 390 So.2d at 1323-1324. P & K failed to do so. This case is similar to White v. Johns-Manville Sales Corporation, 416 So.2d 327 (La.App. 5th Cir.1982) and not to Schouest. There is a factual basis for the ruling of the trial court on the issue of disability and it is not clearly wrong. This specification of error is without merit.

STATUTORY PENALTIES
P & K and its insurer, Aetna Casualty & Surety Company, contend that the trial court committed error by determining that they acted arbitrarily, capriciously and without probable cause in denying compensation benefit payments to Thornell and assessing statutory penalties.
Under La.R.S. 22:658, if the insurer of an employer fails to make workmen's compensation benefit payments and this failure is found to have been arbitrary, capricious, or without probable cause, the insurer may be compelled to pay a penalty of 12% of the total amount of the claim, together with all reasonable attorney fees incurred by the employee in the prosecution of the claim. This statute is penal in nature and must be strictly construed. It should be utilized only in those instances in which the facts negate probable cause for nonpayment. The burden is on the employee to prove entitlement to penalties. Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982); Moore v. Millers Mutual Fire Insurance Company of Texas, 406 So.2d 708 (La.App. 2nd Cir.1981), writ denied 410 So.2d 1132 (La. 1982); Batiste v. Pointe Coupee Constructors, Inc., 401 So.2d 1263 (La.App. 1st Cir. 1981), writ denied 409 So.2d 615 (La.1981). Where there is a serious defense presented in good faith, the assessment of the statutory penalties is not appropriate. Shatoska v. International Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir.1983).
As previously indicated, the factual issue of whether or not Thornell's employment with P & K contributed to the development of the silicosis was extremely close. P & K had a legal right to litigate this contested issue in court. La. Const. of 1974, art. I, § 22. Its action in doing so was not arbitrary, capricious or without probable cause. The judgment of the trial court concluding otherwise was clearly wrong. This assignment of error has merit. The portion of the judgment assessing statutory penalties (12% of the amount of the claim and the attorney fee) is reversed.

CONTRIBUTION
P & K contends that the trial court committed error by dismissing its third party demand against Service for indemnification or contribution for the workmen's compensation benefit payments for which it is responsible.
In Carter, 415 So.2d at 181, appears the following:
R.S. 23:1031.1 does not specifically exclude the possibility of contribution by former employers when their working conditions contributed to the occupational disease. Nevertheless, a fair interpretation of 23:1031.1 indicates no intent to depart from the general scheme of the compensation actthe employer at the time of the accidental injury causing disability is responsible for paying compensation benefits....
No provision in 23:1031.1 indicates that employers from years back should share responsibility (for paying compensation benefits) with employers of the worker at the time the disease "manifested itself" and "disabled" the worker.

*546 23:1031.1E. This is consistent with the other provisions of the compensation act, which places responsibility on the employer at the time of the "accidental injury" causing disability, and not on previous employers whose conditions might have made the worker only more susceptible to injury. See Starks v. Hardware Mutual Casualty Co., 231 So.2d 657 (La. App.1970).
The decision to require contribution from a former employer, whose working conditions might have contributed to the occupational disease which ultimately disables the worker, is a policy decision which is best left to the legislature.
This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, that portion of the trial court judgment assessing P & K and Aetna with statutory penalties is reversed. In all other respects, the judgment of the trial court is affirmed. The appellants are cast for all costs of this appeal.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Paragraph (E) of La.R.S. 23:1031.1 originally was paragraph (D) when enacted by Act 532 of 1952. Act 644 of 1975 amended the paragraph designation to (E).