_[gTHOMAS F. DALEY, Judge.
The plaintiff, Gill Johnston, has appealed the trial court’s ruling in favor of the defendants, Delta Coating and Fireman’s Fund, in this worker’s compensation case. For the reasons that follow, the judgment of the trial court is set aside and this matter is remanded to the trial court. FACTS:
The plaintiff was the only witness to testify at trial. He testified that he had been employed as a sandblaster for 16 to 17 years and had been working for Delta Coating for two years at the time of this incident. The incident occurred on December 30,^ 1999, when plaintiff was sandblasting pipe elbows. He testified that he had to pick up the elbows to place them on a pallet in order to properly perform the sandblasting. Mr. Johnston estimated the elbows weighed 65 to 100 pounds. each. He picked up two elbows without difficulty. Upon lifting the third elbow, he felt a|3pull in his back. He testified that when he picked up the fourth elbow, “something just went in my back.” He further explained “I fell forward, with the weight of the ... elbow in my hand.” He was un *831 able to breathe and stayed on the ground for some 15 to 20 minutes. The foreman on the job, Kenny Hartman, came to the scene and took plaintiff to see Dr. Clark. Plaintiff testified that Dr. Clark diagnosed a severe cervical strain and possible ruptured disc, and prescribed pain medication, muscle relaxers, and an anti-inflammatory drug.
Plaintiff testified that Kenny told him to stay home until January 2, 2000. He continued to experience pain and on January 13, 2000, he was examined by an orthopedist, Dr. Gordon Nutik. After seeing Dr. Nutik four to five times, he was released to return to light duty work. Plaintiff testified that he tried to go back to work on January 30, 2000, but there was no such thing as light duty at Delta. He had to climb stairs, lift heavy hoses, and carry five gallon buckets of paint. A couple of weeks later, he spoke to Joe Marshall (presumably a supervisor at Delta) about his difficulty in performing this type of work. Plaintiff testified that Mr. Marshall told him the only light duty they could offer was “running” but plaintiff was unable to do this because he did not have a driver’s license. Plaintiff admitted that he had not sought other employment. Because of the pain he experienced at work, he did not return to work after January 30, 2000.
Plaintiff continued to experience pain and Dr. Nutik referred him to Dr. Appleb-aum, a neurosurgeon. Plaintiff testified that he was told by Dr. Applebaum that nothing was wrong with him and he should go back to work, despite that fact that an MRI showed a herniated disc between the sixth and seventh cervical disc space.
In an effort to get some relief from his pain, plaintiff sought treatment from Dr. E.W. Sudderth on March 3, 2000. Plaintiff explained that Dr. Sudderth performed a |4more extensive examination than that of Drs. Nutik and Applebaum. During this examination, Dr. Sudderth detected a hernia in the left groin area. Plaintiff testified that this area had been hurting for a month or two after the incident. Plaintiff testified that Dr. Sudderth recommended certain tests be performed, but these were not performed because the worker’s compensation insurance carrifer, Fireman’s Fund, refused to pay for them. He testified that he would like to have this hernia repaired. Plaintiff further testified that he had to stop seeing Dr. Sudderth because Fireman’s Fund would not pay for the visits.
Plaintiff also testified that he was examined by Dr. Katz and Dr. Smith, both of whom suggested he have a functional capacity evaluation and attend a work hardening program. These recommendations were not followed because Fireman’s Fund refused to pay for them. Plaintiff sought treatment at Charity Hospital where he was referred to a neurosurgeon. Physical therapy was recommended, but again, Fireman’s Fund refused authorization. Plaintiff also sought treatment at East Jefferson General Hospital because of pain from his neck, low back, and hernia.
The deposition of Dr. Sudderth was admitted into evidence. He testified that he was board qualified in general surgery and board certified in cosmetic surgery. Dr. Sudderth testified that plaintiff told him he was injured while picking up heavy pipe elbows. He complained of pain in the lumbar and cervical spine with any range of motion and while sleeping. He also complained of severe occipital headaches. Upon examination, Dr. Sudderth noted pain upon palpation in the abdomen and all areas of the spine. Dr. Sudderth noted pain in the left testicle. After reviewing the MRI and x-rays, Dr. Sudderth diagnosed plaintiff as having a herniated nucleus pulpos in the cervical spine, lumbosacral *832 spasm, headaches, and a left inguinal hernia. Dr. Sudderth explained that the MRI showed a herniated disc at the space between | ^cervical vertebrae six and seven. He explained that the inguinal hernia is a protrusion of abdominal contents down into the scrotum brought on by an increase in intra abdominal pressure either through sudden or chronic strain. Dr. Sudderth attributed the back and neck injuries, as well as the hernia, to the December 30, 1999 incident. Dr. Sudderth recommended plaintiff have a CT scan performed and referred him to a neurologist and an orthopedist. He disagreed with the recommendation of Drs. Nutik and Applebaum that plaintiff return to work, explaining that the hernia could become strangulated, which could cause a life-threatening situation.
Five medical reports by Dr. Nutik were admitted into evidence. In a report dated January 7, 2000, Dr. Nutik stated plaintiff complained of low back pain radiating to the neck after picking up pipe. Dr. Nutik opined plaintiff sustained a soft tissue strain of the low back and possibly mid-back and neck. He prescribed pain medication, a muscle relaxant, and an anti-inflammatory drug, as well as physical therapy. On the next visit, Dr. Nutik noted that plaintiff requested an MRI of his neck. Dr. Nutik refused this request explaining that it did not seem likely that the neck was injured based on the description of the injury. He noted plaintiffs low back pain was improving and recommended physical therapy be continued. Dr. Nutik released plaintiff to return to light duty work on January 17, 2000. In a report dated February 7, 2000, Dr. Nutik stated that plaintiff had a lot of subjective complaints without physical findings of an objective nature to explain the cause of these complaints. Dr. Nutik stated plaintiff could do light duty work and limit lifting to 20 pounds and no climbing. Dr. Nutik ordered MRIs of plaintiffs lumbar and cervical spine. In a report dated February 18, 2000, Dr. Nutik noted the MRI of the lumbar spine was normal, while the MRI of the cervical spine showed a disc herniation at the spaee between the sixth and seventh cervical vertebrae. Dr. Nutik continued to report | fithat plaintiff was capable of performing light duty work. He referred plaintiff to Dr. Applebaum, a neurosurgeon, on February 17, 2000. Finally, in a report dated April 30, 2000, Dr. Nutik stated that he reviewed Dr. Sudderth’s records and did not agree that plaintiff needed a CT scan because no additional information would be obtained since plaintiff already had an MRI. He again stated that plaintiff was capable of performing light duty work.
Two reports from Dr. Robert Appleb-aum were admitted into evidence. In a report dated February 18, 2000, Dr. Ap-plebaum stated that plaintiffs physical examination showed no significant mechanical or neurological findings. He noted the MRI showed a herniated cervical disc, but stated there was no compression of the spinal cord or nerve root irritation, thus the herniation was not clinically significant. In a report dated September 17, 2001, Dr. Applebaum stated that he examined plaintiff who continued to complain of neck and low back pain. He stated that he reviewed myelograms and CT scans of the cervical and lumbar spines taken on September 7, 2001. Dr. Applebaum stated that the lumbar spine showed no herniated disc, nerve root irritation, or other significant abnormality. He stated that the cervical spine did not show herniated disc or nerve root irritation, but did note minimal spondylosis at the sixth-to-seventh cervical vertebrae, which he found not to be clinically significant.
A report from Dr. Barbara Smith was introduced into evidence. Dr. Smith ex *833 amined plaintiff on April 24, 2000, and diagnosed plaintiff as having cervical disc disease and lumbosacral pain. She recommended plaintiff have an electromyelo-gram and nerve conduction studies on his legs and referred him to an orthopedist.
A report from Dr. Ralph Katz was admitted into evidence. Dr. Katz examined plaintiff on May 10, 2000. He noted subjective complaints of cervical and low back 17pain, incongruencies in the low back pain, and poor effort during the examination. Dr. Katz stated the cervical MRI showed a disc protrusion, but no impingement on the nerve root. He concluded there was no evidence of neurological deficits, no radicu-lar symptoms, and no weakness. He felt plaintiff was capable of at least light duty work and recommended a functional capacity evaluation to determine the level of functioning and a work reconditioning program if needed.
Records dated December 12, 2001 from a visit to Charity Hospital were admitted into evidence. These records indicate plaintiff complained of weakness, numbness, and tingling in his arms and legs and increased neck pain. A small cervical disc bulge was noted and plaintiff was referred for physical therapy and the pain clinic. He was prescribed an anti-inflammatory medication.
Records from East Jefferson General Hospital emergency room were admitted into evidence. The records dated June 24, 2001, state the MRI showed a disc herniation at the space between the sixth and seventh cervical vertebrae and a mild bulge at the fourth and fifth cervical disc space. Plaintiff was told to follow up with a neurosurgeon. In records dated July 20, 2001, plaintiff complained of chronic neck and back pain and a “knot” on his left testicle that had been present for 17 months. An ultrasound was performed that showed a left variocele and an epidi-dymal cyst. He was referred to a urologist.
At the conclusion of trial, the case was taken under advisement. The trial judge rendered judgment, without written reasons, in favor of defendants, finding claimant failed to carry his burden of proving he was injured as the result of a work-related accident. He was denied benefits, attorney fees and penalties, and his claim was dismissed. This appeal followed.
JaPISCUSSION:
On appeal, plaintiff argues the trial court committed manifest error in finding that plaintiff failed to carry his burden of proving he was injured as the result of a work-related accident. We agree. There are numerous references in the medical records to support plaintiffs claim of injuries as a result of the December 30, 1999 incident.
Appellate courts review the findings of the hearing officer in workers’ compensation cases using the manifest error, clearly wrong standard that precludes the setting aside of the hearing officer’s findings unless they are clearly wrong when viewed in light of the entire record. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706.
During the trial, the plaintiff testified regarding the incident of December 30, 1999. He described a pull in his back while picking up a piece of pipe: He testified that when he picked up the next piece of pipe, he fell to the ground. He testified that his foreman came to the scene and took him to Dr. Clark, who diagnosed cervical strain and a possible ruptured disc.
In Daney v. Argonaut Ins. Co., 421 So.2d 331, 337 (La.App. 1 Cir.1982), the court stated:
In evaluating evidence, a trier of fact should accept as true the uncontradicted *834 testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony.
Plaintiff, Gill Johnston’s version of the accident is uncontradicted in the record. We find nothing in the record to cast suspicion on his testimony. The only other evidence admitted were numerous medical reports. No report suggests that Gill Johnston was not injured on December 30, 1999. The duration and degree of injury were disputed, | flbut not the fact of injury. In the absence of reasons for judgment, we have no way of knowing the trial judge’s reasons for concluding plaintiff did not carry his burden of proving he was injured as a result of a work-related accident and was not entitled to recover.
Dr. Nutik’s reports indicate that plaintiff complained of low back pain, radiating to his neck after picking up a pipe. Dr. Nutik concluded that plaintiff sustained a soft tissue strain of the low back and possibly mid-back and neck. Dr. Applebaum’s report states that plaintiff sustained an injury to his neck and back in an accident a few months ago. Dr. Sudderth testified that plaintiff injured his back while picking up'heavy pipe elbows. Dr. Smith’s report states that plaintiff felt a pull in his back while lifting pipe elbows then fell forward injuring his neck. Dr. Katz’s report states that plaintiff injured his back while lifting an elbow-iron and felt a pulling sensation across his lower back and neck. All of the physicians related these complaints to the lifting of the pipe elbows and diagnosed plaintiff as having an injury due to this incident. Plaintiffs testimony established that he reported this accident immediately and received treatment the same day. This testimony was uncontroverted. Based on the consistent history given by plaintiff regarding the pain- in his neck and low back when he lifted the pipe elbow and the conclusion by the physicians that plaintiff had an injury to his back and possibly neck, we find the trial judge committed manifest error in finding the plaintiff failed to carry his burden of proving he was injured as a result of a work-related accident.
Dr. Nutik concluded that plaintiff sustained a soft tissue injury that was improving and was capable of doing light duty work, while Dr. Applebaum stated that plaintiff was capable of performing any type of work. Dr. Katz concurred that plaintiff was capable of performing at least some type of work and, recommended a | í (functional capacity evaluation to determine his level of functioning. Dr. Sud-derth testified that plaintiff was not capable of performing any type of work.
The defendants strongly argue that plaintiff is not entitled to recover for the inguinal hernia if we conclude this condition does exist. Defendants refer to R.S. 23:1221(4)(r)(i) which states:
In all claims for inguinal hernia, it must be established by a preponderance of the evidence that the hernia resulted from injury by accident arising out of and in the course and scope of employment; that the accident was reported promptly to the employer, and that the employee was attended by a licensed physician within thirty days thereafter.
Defendants assert that the hernia was not diagnosed for more than thirty days after the accident. In Carmouche v. Haynes Lumber Co., Inc., 378 So.2d 466 (La.App. 3 Cir.1979), writ denied 379 So.2d 1114 (La.1980), the Third Circuit interpreted the language of this statute stating the statute is “broadly written and requires only that the employee be attended by a physician, not that he be attended by a physician for any particular trouble.”
*835 Dr. Sudderth testified m his deposition that plaintiff suffers from an inguinal hernia and that the hernia was caused by the work accident of December 30, 2000. Also, the record from plaintiffs July 20, 2001 emergency room visit to East Jefferson General Hospital emergency room refers to an inguinal ring hernia. No other physician examined plaintiff for the presence of a hernia. Dr. Sudderth testified that if plaintiff continued to work, the inguinal hernial could become strangulated, which would result in a life threatening condition. In the absence of some contrary medical evidence, Dr. Sudderth’s medical diagnosis and causation opinion and recommendations for treatment stand uncontested. Given the facts and circumstances of the case before us, we find that the requirements of R.S. 23:1221(4)(r)(i) were met.
|nThe plaintiff was never tendered an offer to have surgery and correct a problem that could be life threatening should plaintiff return to work. Such an injury entitles plaintiff to workers’ compensation benefits. See Hoffman v. SWACO, 439 So.2d 1233 (La.App. 5 Cir.1983).
We reverse the trial court’s ruling and find that the plaintiff injured his back and suffered a hernia in ■ a work-related accident on December 30, 1999, entitling him to compensation benefits. This matter is remanded to the trial court for a determination of appropriate lost wage and medical compensation benefits and a determination of whether the defendant should be assessed penalties and attorney fees for arbitrary and capricious failure to pay.

REVERSED AND REMANDED.